## CHAIN BELT CO. v. OKLAHOMA TAX COMMISSION.

No. 30012. Sept. 9, 1941.

*116 P. 2d 899.*

Ames, Cochran, Monnet, Hayes & Ames, of Oklahoma City, and Wood, Warner & Tyrrell, of Milwaukee, Wis., for plaintiff in error.

F. M. Dudley, A. L. Herr, and C. D. Stinchecum, all of Oklahoma City, for defendant in error.

RILEY, J. Under the provisions of section 6, art. 6, ch. 66, S. L. 1935, 68 Okla. Stat. Ann. § 871 et seq., an income tax amounting to $401.91, with interest and penalty, was levied by the Oklahoma Tax Commission upon the net income derived from all property owned and/or business transacted within this state by the Chain Belt Company for the years 1935 to 1938, inclusive.

Appellant is a foreign corporation organized under the laws of Wisconsin, wherein is located its principal place of business. It is not licensed to do business and maintains no office or special place of business in Oklahoma. From 1935 to 1938, inclusive, it has shipped merchandise to various consignees in Oklahoma for resale by such consignees. It retained title to all such merchandise so shipped until sale occurred by the consignee to his customer; whereupon title vested in the consignee, and he became indebted to Chain Belt Company. The company had no control over the business of consignee, but looked solely to the fixed price of goods quoted to consignees. When a consignee sold the merchandise, it was withdrawn from consignment and delivered to consignee's customer. Title passed to consignee and thence to his customer. Title in merchandise so consigned remained in Chain Belt Company until consignee elected to purchase.

Appellant contends that it was not doing business within this state and so was not liable for the tax. Appellee assessed the tax on sales made by Chain Belt Company to its consignees of merchandise located within the state which it contends was "property owned and/or business transacted within this state," the equivalent of doing business here.

Under the stipulated facts, the consignees were not obliged to pay for the merchandise until they had sold the same to their customers; consequently, the "bailment with option to purchase" was in due course of business converted into a sale of merchandise located within this state. If this development in the relation of the parties constituted an intrastate transaction, it was sufficient to justify the tax. Appellant contends that the shipments of merchandise under the consignment contracts constitute interstate commerce and that income derived therefrom is not taxable. There is an element of interstate commerce involved; it is the subsequent sale of goods located here that designates the transaction intrastate, if at all. However, as we view the decisions,

the interstate feature described does not preclude the state from levying an income tax on income derived from business transacted within the state. Like the situation in McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33, 60 S. Ct. 388, the local transaction ". . . is conditional upon transfer of title or possession or an agreement therefor, consummated in the state." The exaction is comparable; notwithstanding, therein was considered a sales tax, whereas herein is considered an income tax. That decision and the cause at bar are indentical in the fact that transfer of title and consummation of sale occurs within the taxing state. It concerns merchandise heretofore placed within this state under a contract of bailment. Therein it was said:

". . . It was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business. . . . A tax may be levied on net income wholly derived from interstate commerce. Nondiscriminatory taxation of the instrumentalities of interstate commerce is not prohibited. . . ."

It was held in Western Live Stock et al. v. Bureau of Revenue, 303 U. S. 250, 58 S. Ct. 546, that a privilege tax on gross receipts from sale of advertising without the state did not infringe the commerce clause of the Federal Constitution, and the rule was reiterated that " 'Even interstate business must pay its way,' "—that "Net earnings from interstate commerce are subject to income tax, . . ." United States Glue Co. v. Oak Creek, 247 U. S. 321, 38 S. Ct. 499.

In Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, it was held that:

"A state may tax income derived from local property and business owned and managed from without by a citizen and resident of another state. . . .

"Net income derived from interstate commerce is taxable under a state law providing for a general income tax."

It is contended there that the taxpayer was engaged exclusively in interstate commerce and therefore not subject to the tax. While the court therein assumed that the method of business (shipping oil out of this state) constituted interstate commerce, it was held that the tax upon net proceeds was plainly sustainable even though it included net gains from interstate commerce.

In Atlantic Coast Line Railroad Co. v. Doughton et al., 262 U. S. 413, 43 S. Ct. 620, it was held that a state may impose a tax upon the net income of property although the property is used in interstate commerce. There was a distinguishing feature in that cause between an income on property and an income on the owner, but for the purposes of the query before us, we think the distinction immaterial. Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 65 L. Ed. 165, 41 S. Ct. 45.

The authorities heretofore cited sustain the proposition that net income derived from property owned or business transacted within this state is taxable by the state even though the intercourse in its inception may have been interstate in character.

Appellant relies upon Curlee Clothing Co. v. Oklahoma Tax Commission, 180 Okla. 116, 68 P. 2d 834. Therein it was held that:

"The sale of goods by a foreign corporation through soliciting agents, who take orders subject to approval of the company at its home office, does not constitute doing business within this state,"

—and that the rule applies as well to question of taxation as to regulation of foreign corporations. But the facts are different in the cause at bar. The Chain Belt Company did not make sales through soliciting agents. It located its merchandise in this state under consignment; that relation was then changed by fulfillment of conditions whereunder consignees exercised options to purchase, resulting in absolute sale and the consignee became the debtor of

appellant. 8 C. J. S. 239; Mauer v. Featherstone, 105 Neb. 72, 178 N. W. 845.

This was not a factorage contract as in Butler Bros. Shoe Co. v. U. S. Rubber Co. (C. C. A.) 156 F. 1. The consignor had no interest in the sale by consignee to his customers, but looked merely to a sale to consignees. Nor were consignees authorized to receive payment on behalf of consignor. Their obligation was to pay upon the advent of a sale of property theretofore consigned and located within this state. 16 Words and Phrases, Perm. Ed., p. 21, "Factor."

There is little doubt that a foreign corporation selling and delivering goods from its warehouse within a state does business there, Armour Packing Co. v. Vinegar Bend Lbr. Co., 149 Ala. 205, 42 So. 866; or that the sending of textbooks in carload lots into another state to be stored and distributed to students reaches the same end, International Text-Book Co. v. Mueller, 149 Ill. App. 509; or that business was done in a state by a foreign corporation that sent goods to a transfer company in another state where the latter sorted and delivered the goods in the original packages to customers of the foreign corporation, American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 S. Ct. 365; Sonneborn Bros. v. Cureton, 262 U. S. 506, 43 S. Ct. 643. See, also, Wills v. National Mineral Co., 176 Okla. 193, 55 P. 2d 449, and cases therein cited.

It is contended that a foreign corporation's immunity from a state's regulatory statutory provisions such as that providing a corporation license fee renders the corporation immune from the exaction of an income tax. The rule does not extend that far, for the tax is levied upon income derived from "property owned" or "business transacted" within this state.

The rule is stated in the recent case of State of Wisconsin et al. v. J. C. Penny Co., 311 U. S. 435, 61 S. Ct. 246, 85 L. Ed. 267, December 16, 1940, Supreme Court of the United States, that:

"A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society."

That cause concerned a supplementary income tax, though it was designated as one on the privilege of declaring dividends.

Indubitably the taxing power exerted herein by the state bears some fiscal relation to protection, opportunities, and benefits given by the state. The property out of which the income accrued was located and protected here. Advantage of profitable business was here obtained.

It is our view that the taxing power of the state is not to be imprisoned by "formulas that are not compelled by the Constitution, but merely represents judicial generalizations exceeding the concrete circumstances which they profess to summarize."—Idem. There exists "jurisdiction to tax" and a "taxable event" occurring within this state, wherefore the order of the Oklahoma Tax Commission is sustained.

All the Justices concur.