McLeod, Commissioner of Revenues, *v.* Memphis Natural Gas Company.

4-7429                                  183 S. W. 2d 927

Opinion delivered November 6, 1944.

880

*Herrn Northcutt,* for appellant.

*Canada, Russell & Turner* and *P. A. Lasley,* for appellee.

McHANEY, J. Appellee, a foreign corporation, not authorized to do business in Arkansas, owns and operates a gas pipe line, originating in the State of Louisiana, and running through the southeast corner of the State of Arkansas, crossing the Mississippi River near Greenville, Mississippi, and running thence in a northerly direction through the western part of said state to Memphis, Tennessee, and from thence to Jackson, Tennessee. Its principal business office is in the city of Memphis. It has no business office and transacts no business in this state, except as hereinafter stated. Natural gas is transported through said pipe line from the Monroe, Louisiana, field for sale to distributors along its line in said states. In the State of Arkansas, at Wilmot, it owns and operates as a part of the facilities of said pipe line a compressor station which consists of a building 30 x 120 feet, housing five 600-horsepower gas engine-driven compressor units, through which the gas passes and is compressed and its pressure increased to hasten its movement to points of delivery thereafter to be reached in Arkansas, Mississippi and Tennessee, thereby increasing the carrying capacity of the pipe line. The gas does not come to rest at any time in the process of compression, but flows from the

line through said units and back into the line. It has four of such compressor stations on its line, one in Louisiana, one in Arkansas, two in Mississippi and one in Tennessee. At Wilmot in this state, appellee has nine highly skilled employees who work in shifts and who supervise and control the operation of the engines and units and related machinery at said compressor station. It also sells at wholesale natural gas to Arkansas Power & Light Co., for resale and distribution in some half dozen cities and towns in southeast Arkansas, under a contract between them made without the State of Arkansas. ''The Arkansas company is billed for gas from, and remits to,'' appellee's Memphis office. The gas so sold at no time came to rest in Arkansas prior to delivery to said distributor and all gas so delivered was either directly from said pipe line or from a lateral line which connects with said main line at a point south of Lake Village, Arkansas, and extends some miles north through Lake Village to a point where it connects with a line owned by the distributor. The gas so sold to the distributor is measured by a thermometer and a meter, furnished by appellee, before it passes into the distributor's lines. The distributor resells all such gas to Arkansas consumers, and appellee has no connection with and no participation in such resales. Appellee has been assessed and has paid all ad valorem taxes due in Arkansas for 1932 and subsequent years. It did not file an income tax return for the years 1932 to 1941 inclusive with appellant, and, in 1943, appellant made demand upon appellee for the filing of such returns for said years, and said demand was complied with, saving its right to contest the validity of such demand. On April 6, 1943, appellant made separate income tax assessments against appellee for each of said years 1932-1941, aggregating $6,654.77, which appellee paid under protest on November 5, 1943, and, on December 2, 1943, it brought this action against appellant to recover the sum so paid as provided by § 14054 of Pope's Digest. Trial resulted in a decree in appellee's favor for the recovery of said sum. The case is here on appeal.

The above facts and others were stipulated. There is no question regarding the amount of the income tax due the State of Arkansas, if any is due to be paid. It is appellee's contention, first, that the provisions of the Income Tax Act of 1929 do not apply to it; and second, that the business done by it in Arkansas is wholly interstate in character and that its net income derived from such business in Arkansas is not subject to the provisions of the Income Tax Act of 1929, § 14024 *et seq.* of Pope's Digest, or if so, the act is unconstitutional.

Section 14026, subsections (b), (c) and (d), provide: "(b) Every corporation organized under the laws of this State shall pay annually an income tax with respect to carrying on or doing business equivalent to two (2%) per cent of the entire net income of such corporation as defined herein, received by such corporation during the income year; and every foreign corporation doing business within the jurisdiction of this State shall pay annually an income tax equivalent to two (2%) per cent of a proportion of its entire net income to be determined as hereinafter provided.

"(c) A like tax is hereby imposed and shall be assessed, levied, collected, and paid, annually, at the rates specified in this section upon and with respect to the entire net income as herein defined, except as hereinafter provided, from all property owned, and from every business, trade or occupation carried on in this State by individuals, corporations, partnerships, trusts or estates, not residents of the State of Arkansas.

"(d) Every railroad or other public utility, whether organized under the laws of this State or any other State or the Federal Government, shall be subject to the provisions of this Act, and shall pay the income tax hereby levied upon that proportion of its entire net income applicable to the State of Arkansas as hereinafter described."

It will be noticed that in sub-section (b) above quoted a tax is required to be paid by "every foreign corporation doing business within the jurisdiction of this state," and appellee says said provision is not applicable to it

because while it is a foreign corporation, it does no business within the jurisdiction of this state within the meaning of said provision, and has not complied with our foreign corporation laws, §§ 2247 *et seq.* Pope's Digest. Assuming without so deciding that appellee is not subject to the tax under sub-section (b), because not "doing business" in this state within the meaning of the language used, we think there can be no doubt that appellee is required to pay under the broad language used in either or both sub-sections (c) and (d), above quoted.

But, says appellee, we held in *Temple* v. *Gates,* 186 Ark. 820, 56 S. W. 2d 417, where both sub-sections (b) and (c) were under consideration, that the Southern Pine Lumber Company was not subject to an income tax in this state because it was not doing business in this state, except in interstate commerce. We there said: "This statute, (referring to (c) ), means that if a foreign corporation conducts a business in this state, it must pay an income tax fixed upon its entire net income. The statute has no relation whatever to profits gained from interstate transactions by a corporation conducting a business in another state. In order to subject a foreign corporation to the payment of the income tax imposed by the statute in question, the business transacted by it in this state 'must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction.' " Citing *Sillin* v. *Hessig-Ellis Drug Co.,* 181 Ark. 386, 26 S. W. 2d 122.

In that case, however, the Southern Pine Lumber Company owned no property in this state and it sold some of its products, manufactured in Texas, to Arkansas purchasers, through an Arkansas corporate agent, wholly in interstate commerce. While here, appellee owns property in Arkansas, a pipe line several miles in length, a booster or compressor station, a branch line, as above stated, to serve the distributor, one or more thermometers and meters to measure the gas sold to the distributor, it has nine skilled employees working at said compressor station, and it owns in Arkansas the gas sold to the distributor. The net income, the tax on which it seeks

to recover in this action, is derived from the property so owned in Arkansas, and sub-section (c) specifically levies a tax "upon and with respect to the entire net income as herein defined . . . from all property owned . . . in this state by . . . corporations . . . not residents of the State of Arkansas." The opinion in the Temple case did not even quote the provision of sub-section (c), here quoted, for the reason it had no application to the undisputed facts in that case, as the Southern Pine Lumber Company owned no property in Arkansas and had no income therefrom as a matter of course. This is the distinction between *Temple* v. *Gates, supra,* and the case at bar, and we hold that said case is not controlling here, and that the tax was properly levied on appellee's net income under said act.

But appellee insists that its net income in Arkansas is derived wholly from interstate commerce, and that if the Arkansas Income Tax Act of 1929 is construed to apply to appellee's income, it is unconstitutional and void as being in violation of the commerce, the due process and the equal protection clauses of the Constitution of the United States.

We sustained the constitutionality of this act in *Stanley* v. *Gates,* 179 Ark. 886, 19 S. W. 2d 1000. In *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876, Mr. Justice STONE stated the question for decision as follows: "The question for decision is whether the New York City tax laid upon sales of goods for consumption, as applied to respondent, infringes the commerce clause of the Federal Constitution." After quoting § 8 of art. I of the U. S. Constitution that "Congress shall have power . . . to regulate commerce with foreign Nations and among the several States . . ," the court said: "In imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred upon

Congress, that the tax can be said to exceed constitutional limitations. See *Gibbons* v. *Ogden,* 9 Wheat. 1, 187, 6 L. Ed. 23; *South Carolina Highway Dept.* v. *Barnwell Bros.,* 303 U. S. 177, 58 S. Ct. 510, 82 L. Ed. 734. Forms of state taxation whose tendency is to prohibit the commerce or place it at a disadvantage as compared or in competition with intrastate commerce, and any state tax which discriminates against the commerce, are familiar examples of the exercise of state taxing power in an unconstitutional manner, because of its obvious regulatory effect upon commerce between the states.

"But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business. *Western Live Stock* v. *Bureau,* 303 U. S. 250, 58 S. Ct. 546, 82 L. Ed. 823, 115 A. L. R. 944. Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce, which the Constitution leaves to Congress. A tax may be levied on net income wholly derived from interstate commerce."

To support the last statement the cases of *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 41 S. Ct. 45, 65 L. Ed. 165; *Atlantic Coast Line R. Co.* v. *Doughton,* 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051; and *Matson Navigation Co.* v. *State Board,* 297 U. S. 441, 56 S. Ct. 553, 80 L. Ed. 791, are cited.

In *Memphis Natural Gas Co.* v. *Beeler,* 315 U. S. 649, 62 S. Ct. 857, 86 L. Ed. 1090, this same appellee was held subject to the income tax law of Tennessee, the court saying: "In any case even if taxpayer's business were wholly interstate commerce, a non-discriminatory tax by Tennessee upon the net income of a foreign corporation

having a commercial domicile there, cf. *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193, 56 S. Ct. 773, 80 L. Ed. 1143, or upon net income derived from within the state, *Shaffer* v. *Carter,* 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445; *Wisconsin* v. *Minnesota Mining Co.,* 311 U. S. 452, 61 S. Ct. 253, 85 L. Ed. 274; cf. *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308, 57 S. Ct. 466, 81 L. Ed. 666, 108 A. L. R. 721, is not prohibited by the commerce clause on which alone taxpayer relies. *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 119-20, 41 S. Ct. 45, 65 L. Ed. 165; cf. *Bass, Ratcliff & Gretton, Ltd.,* v. *Tax Comm'n,* 266 U. S. 271, 48 S. Ct. 82, 69 L. Ed. 282; *Western Live Stock* v. *Bureau,* 303 U. S. 250, 255. There is no contention or showing here that the tax assessed is not upon net earnings justly attributable to Tennessee. *Underwood Typewriter Co.* v. *Chamberlain, supra;* cf. *Bass, Ratcliff & Gretton, Ltd.,* v. *Tax Comm'n, supra; Butler Bros.* v. *McColgan,* 315 U. S. 501, 62 S. Ct. 701, 86 L. Ed. 991. It does not appear that upon any theory the tax can be deemed to infringe the commerce clause.''

While the opinion in that case referred to the fact that the gas company had a commercial domicile in Tennessee, that fact was not of controlling importance because the court held that the tax could be lawfully levied on the net-income of a foreign corporation, derived wholly from interstate commerce, ''having a commercial domicile there, . . . or upon net income derived from within the state,'' which we understand to mean that such a tax can be levied ''upon net income derived from within the state,'' whether such foreign corporation has a commercial domicile there or not.

Moreover, in an opinion rendered October 2, 1944, not yet officially reported, the Supreme Court of Mississippi held this same appellee subject to the income tax law of that state, in the case of *State Tax Commission* v. *Memphis Natural Gas Co.,* 19 So. 2d 477. Appellee's operations in Mississippi are no different from its operations in this state, except it has two compressor stations

in that state, a longer pipe line, sells gas at wholesale to the Mississippi Power & Light Co. and the latter distributes gas to consumers in more towns, but these are distinctions without a difference in principle in its operations. It is not "commercially domiciled in that state," but as here, its taxable "income is derived from within the state and attributable to business done there."

Our conclusion is that the learned trial court was in error in decreeing a refund of the money so paid by appellee to appellant, and the decree is accordingly reversed and the cause is dismissed.

McFADDIN, J., dissenting. The business of the Memphis Natural Gas Company in Arkansas is either (1) intra-state, or (2) interstate. Let us examine to see the result in either event.

I. *Intrastate Argument.* It cannot be successfully urged that the business is intra-state, because in the case of *Illinois Natural Gas Co.* v. *Central Illinois Public Service Co.*, 314 U. S. 498, 62 S. Ct. 384, 86 L. Ed. 371, the United States Supreme Court held such a business was interstate; and the facts in the reported case were much stronger for intra-state business than are the facts in the case at bar. The holding of the United States Supreme Court in the Illinois Gas case is a definite block to any attempt by the State of Arkansas to subject the Memphis Gas Company to income tax on the theory of intra-state business. The majority opinion quotes a portion of subsection (c) of § 3 of Act 118 of 1929 regarding ownership of property in the state as a justification for sustaining the tax. If, by that quotation, the majority meant to claim any semblance of intra-state business, then the majority opinion is at war with the Illinois Gas case.

II. *Interstate Argument.* If the business of the Memphis Gas Company in Arkansas is interstate, as I believe it is, then the holding of the Arkansas Supreme Court in *Temple* v. *Gates* (1933), 186 Ark. 820, 56 S. W. 2d 417, is a definite block to this attempt by the State of Arkansas to subject the Memphis Gas Company to tax on income arising from interstate commerce; because, in

*Temple* v. *Gates,* this court, in considering the same section of the same Income Tax Act as here involved, said:

"The statute has no relation whatever to profits gained from interstate transactions by a corporation conducting a business in another state. In order to subject a foreign corporation to the payment of the income tax imposed by the statute in question, the business transacted by it in this state 'must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction.' *Sillin* v. *Hessig-Ellis Drug Company,* 181 Ark. 386, 26 S. W. 2d 122."

The Arkansas Income Tax Act is Act No. 118 of 1929. In 1933 this court, in *Temple* v. *Gates,* in a unanimous opinion, held that, since the transactions were interstate, the statute did not apply, and that the statute had no relation to profits of a foreign corporation gained from interstate transactions. This case constitutes a judicial interpretation and declaration that the Arkansas Income Tax Act of 1929 did not apply to income of a foreign corporation from interstate business. The Arkansas legislature has had six regular sessions since the opinion and holding in *Temple* v. *Gates,* and has never seen fit to amend the 1929 Income Tax Act to make it apply to income from interstate transactions. So, it seems reasonable to say that the legislature has acquiesced in the judicial interpretation, and that the 1929 Act here under consideration was not intended to tax income received by foreign corporations from interstate transactions.

To avoid the effect of *Temple* v. *Gates,* the majority pursue two courses:

(a)   There is the attempt to distinguish it from the case at bar; but I can see no sound line of distinction. *Temple* v. *Gates* quoted from both subdivisions (b) and (c) of § 3 of the Act 118 of 1929, and then made the positive statement:

".  .  .  in order to subject a foreign corporation to the payment of the income tax imposed by the statute

in question, the business transacted by it in this state must be of such nature and character as to warrant the inference that the corporation has subjected itself to local jurisdiction.''

A few lines later in the opinion the court emphasized that the foreign corporation had never qualified to do business in this state. The same situation applies to the Memphis Natural Gas Company in the case at bar. *Temple* v. *Gates* cannot be distinguished. It stands like a wall against any attempt to tax income derived by a foreign corporation from interstate business.

(b) The majority opinion cites many cases holding that a state may tax income from interstate business. Some of these cases are: *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876; *Western Live Stock* v. *Bureau,* 303 U. S. 250, 58 S. Ct. 546, 82 L. Ed. 823, 115 A. L. R. 944; *Memphis Natural Gas Co.* v. *Beeler,* 315 U. S. 649, 62 S. Ct. 857, 86 L. Ed. 1090. These cases, from the Supreme Court of the United States, were all decided since 1933, the year the Arkansas Supreme Court rendered its opinion in *Temple* v. *Gates, supra.* These opinions from the Supreme Court of the United States would sustain a tax on interstate commerce if we had such a tax in Arkansas. But the fact that a state has the power to levy a tax does not prove that the power has been exercised. I think it is well within the power of the Arkansas legislature to broaden the Arkansas Income Tax Act to subject the Memphis Natural Gas Company to such tax as is here sought to be collected; but I contend that the Arkansas legislature has not exercised that power. *Temple* v. *Gates* and the intervening 11 years of legislative inaction constitute my reason for so stating. The situation here is very similar to the situation before this court in the case of *McLeod* v. *Dilworth,* 205 Ark. 780, 171 S. W. 2d 62, in which the argument was made that a use tax could be sustained. Our answer was that the state had not yet levied such a tax; and that view was sustained by the Supreme Court of the United States in *McLeod* v. *J. E. Dilworth Co.,* 205 Ark. 780, 171 S. W. 2d 62. In the case

at bar the state could impose an income tax on net profits accruing to a foreign corporation from interstate business, but *Temple* v. *Gates* emphatically states that the state has not done so.

Neither does the holding of the Supreme Court of Mississippi in the case of *State Tax Commission* v. *Memphis Natural Gas Co.,* 19 So. 2d 477, aid the majority, because the Mississippi Supreme Court did not have to circumvent a case like *Temple* v. *Gates.* The Supreme Court of Mississippi held it was the intention of the Mississippi legislature to levy a tax on interstate commerce, and sustained the tax. In the case at bar, the majority of this court are sustaining a tax in the face of *Temple* v. *Gates,* which held that there was no intention to levy such a tax. In short, *Temple* v. *Gates* is a definite block to any attempt by the State of Arkansas to subject the Memphis Natural Gas Company to income tax on the theory of interstate business.

Therefore, either interstate or intra-state, the result is the same: there is no tax. I, therefore, respectfully dissent from the majority holding in the case at bar; and I am authorized to state that Mr. Justice FRANK G. SMITH concurs in this dissent.