## AMERICAN REFRIGERATOR TRANSIT CO. v. OKLAHOMA TAX COMMISSION.

No. 33932.   July 19, 1949.

*208 P. 2d 566.*

Thomas Harper, of Ft. Smith, Ark., Leffel Gentry, of Little Rock, Ark.,

and Glenn S. Givens, of St. Louis, Mo., for plaintiff in error.

R. F. Barry, W. F. Speakman, and E. J. Armstrong, all of Oklahoma City, for defendant in error.

WELCH, J. The Oklahoma Tax Commission denied protests of the American Refrigerator Transit Company against assessments of freight car tax for the fiscal years ending June 30, 1946, and June 30, 1947, and the company has perfected an appeal.

The company owns and maintains a fleet of railroad refrigerator freight cars which it leases to various railroads. From time to time cars of the company are moved by a lessee railroad into or through the State of Oklahoma. The railroads pay the company a flat rate for each mile such cars are used and moved over their lines.

68 O. S. 1941 §805a provides:

"All freight cars . . . rented, leased, or used by any . . . equipment company . . . which are moved over . . . the line of any railroad company . . . wholly or partially within the State, are hereby classified for the purpose of taxation; and a tax equivalent to four (4%) per cent of the gross revenue in this State, is hereby levied on such freight cars; and such tax shall be in lieu of ad valorem taxes upon such freight cars."

The total number of miles that the company's cars were moved within this state and the rate per mile paid to the company and the amount of gross revenue received by the company for the use of its cars in Oklahoma for the fiscal years 1946 and 1947 is not in dispute. Nor is there any issue as to the computation of four per cent of said gross revenues to establish the tax due under the section, supra.

After notice of assessments of tax in accord with such admitted figures and the computation as provided by the statute, the company filed protest asserting the tax imposed to be greater than the amount the company would be required to pay if its cars were taxed on an ad valorem basis; that the assessment of a tax measured by 4% of its gross earnings results in a higher tax than the average ad valorem taxes paid by the citizens of the state on like property, and has the further effect of taxing property of the company which at no time was within the state.

68 O.S. 1941 §805b provides:

"It is hereby declared to be the intention of the Legislature that the tax herein imposed be not greater than the amount of tax such freight line companies, equipment companies, and mercantile companies would pay if their cars were taxed on an ad valorem basis, including any value inuring to such cars by reason of being a part of a going concern.

"The Oklahoma Tax Commission upon the complaint of any person who claims he is taxed too great a rate hereunder, shall take testimony to determine whether the taxes herein imposed are greater than the general ad valorem tax for all purposes would be on such freight cars, if taxed on an ad valorem basis. The Commission shall have the power and it shall be its duty to lower the rate herein imposed to conform to the facts disclosed at said hearing.

"In order to determine the amount of tax such companies would pay, said Commission may value all cars of any company as a unit and allocate to Oklahoma that proportion of the total value which the Oklahoma car mileage bears to the total car mileage of the cars of any such company during the twelve (12) months period ending on June 30th of any year, and may then apply to such value so ascertained the average ad valorem tax rate applied to property throughout the State for that fiscal year."

In a hearing before the Tax Commission a witness for the company testified to the effect that auditors for the company had checked the records of the five major railroads operating in Oklahoma and over which lines the company cars were moved, and had

obtained reports of all the train runs and the average rate of travel on the runs and the time each car and cars of the company were in the custody of the railroads within the state, and from such data the witness had computed that company cars had traveled an average of 308 miles per car per day in the state during the fiscal years involved. Exhibits were introduced by the company for the purpose of showing that the company had an average of 41.45 cars in Oklahoma during each 24 hour period in the fiscal year 1946, and an average of 44.31 cars in Oklahome each day in the fiscal year 1947.

The witness in explanation of the exhibits stated that the figure obtained as the average mileage per car per day, 308, was multiplied by 365 to obtain the average mileage per year each car traveled in the state, and that this resulting figure was divided into the figure representing the total mileage traveled by cars of the company in the state during the years involved to obtain the figures representing the average number of cars of the company in the state each day of the years involved.

The witness further testified that the company records reflect that during the time here involved an average of 1,800 of its cars were each day in shops located outside Oklahoma undergoing repairs, and that an average of 1,000 of its cars were each day out of movement because of loading and unloading operations at stations located outside Oklahoma.

The witness testified that the average value of the company cars as depreciated under a formula prescribed by the Interstate Commerce Commission was $863.68 each in 1946 and $800.64 each in 1947.

Data furnished by the company to the Commission indicates that these values were reached and determined by a reference to the original purchase price of each of the cars in service with cost of additions and betterments to the cars added, less an annual depreciation at the rate of 3.7%. The records submitted reflect that the average age of the cars in service was 18.38 years in 1946 and 19 years in 1947, but that the larger percentage of the cars were purchased at a more recent date and that the more recent purchases were at increasing purchase prices.

It was stipulated that the average ad valorem tax rate throughout the state for the fiscal year 1946 was $3.39 per $100 valuation and for 1947, $3.60 per $100 valuation.

An application of these rates, respectively, to the product of $863.68 and 41.45 and to the product of $800.64 and 44.33 will result in $1,213.62 and $1,241.66. The company contended these last amounts show its correct tax liability for 1946 and 1947.

Four per cent of the gross revenue received by the company for the use of its cars in Oklahoma for the fiscal years 1946 and 1947 amounted to $3,632.60 and $4,848.08, respectively, and these are the amounts of the assessments made and that were protested by the company.

Under the testimony presented and on information furnished by the company, the Commission found that if the cars were taxed on an ad valorem basis for the years involved, such ad valorem tax would exceed 4% of the gross earnings for those years, and denied the protest.

The company contends that the finding was reached by a misapplication of the law; that facts sufficient to support the protest were shown, and that the finding as made and the order based thereon denying the protest was wholly erroneous.

Argument is presented under "Assignments of Error" stated as follows:

"The Oklahoma Tax Commission's order was in error in that it deprived plaintiff of due process of law, by reason of the fact that there was no evidence of record to support the findings and conclusions upon which said order

is based, and because the order ignores the evidence set forth in the record.

"The Oklahoma Tax Commission erred in disregarding the express intention of the Oklahoma Legislature, and in misinterpreting the language of the applicable statute, as contained in 68 O. S. 1941 §805b.

"The order of the Oklahoma Tax Commission was in error to the extent that it charged plaintiff with a discriminatory tax.

"The Oklahoma Tax Commission erred in determining that 135.27 of plaintiff's cars had a taxable situs in the State of Oklahoma in the year July 1, 1945, through June 30, 1946; and in determining that 132.62 of plaintiff's cars had a taxable situs in Oklahoma during the year July 1, 1946, through June 30, 1947.

"The Oklahoma Tax Commission erred in establishing the average value of plaintiff's cars as being 'in excess of $1,800 in each of the years in controversy.' "

It is noted that there is no attack upon the statute under which the assessments of tax were made or challenge of the correctness of the assessments as made thereunder. Under section 805a, supra, a tax is levied on cars used in Oklahoma and in an amount measured by the earnings of the cars in their use within the state during the tax year and it is provided that such tax shall be in lieu of ad valorem taxes.

Section 805b, under which the company had proceeded, contains no provision for the levy of a tax, but provides for a reduction of the tax levied on cars under the provisions of section 805a when it is shown that such tax is greater than if such cars were taxed on an ad valorem basis. Under provisions of the section the burden is on the company complaining of the assessments made in accord with section 805a to show that such assessments of tax were greater than if its cars were taxed on an ad valorem basis.

That a state may lay hold of the average habitual use of movable rail-road equipment as a basis of taxation is not questioned. When individual items of rolling stock are not continuously the same, but are constantly changing, as the nature of their use requires, it has been held that a state may fix the tax by reference to the average number of cars found to be habitually within its limits. Johnson Oil Ref. Co. v. Oklahoma ex rel. Mitchell, 290 U. S. 158, 78 L. Ed. 238. As was stated in American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 43 L. Ed 899:

"The tax may be fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed."

These are the rules by which an ad valorem tax rate may be applied.

Section 805b provides that the Tax Commission may value all cars of a company as a unit and allocate to Oklahoma that proportion of the total value which the Oklahoma car mileage bears to the total mileage of the cars of such company during the particular tax year and then apply the average ad valorem tax rate in the state that particular year to determine the amount of tax the company would pay if taxed on an ad valorem basis.

Obviously, a reference to the total number of the cars in service reduced in the proportion of the Oklahoma mileage and total mileage of such cars will portray in a fair degree of accuracy the average amount of such property used in Oklahoma, and a reference to total value of all cars with like proportionment of value to Oklahoma will reflect the value of the property used in this state.

The formula set out in the statute commends itself in the simplicity of the proof required to obtain its application. Under the state law each railroad company is required to report to the Tax Commission the mileage the cars of each freight car company is operated in Oklahoma over its lines. The ad valorem tax levy of each sub-

division of the state in each particular year is a matter of public record and known to the Tax Commission. The other factors to be shown for an application of the formula are the value of all cars of a company and the total mileage such cars were operated during the tax year.

It is apparent that the formula was not set forth in the statute as an exclusive method by which the Commission might determine the amount of ad valorem tax such company would pay, nor as a limitation upon such company as to the nature of the proof it should submit to support a claim for reduction of tax under the provisions of section 805b. It appears as a suggestion for the convenience of both the taxpayer and the Commission. Whatever the method of calculation an essential fact to be determined is the value of the average amount of the property of the company used and employed in the state during the fiscal or tax year and the burden is upon the company to present evidence under which such fact may be determined.

In the first instance, at the hearing held upon its claim for a réduction of tax, the company offered no proof of the total number of cars it had operating during the years involved, and made no showing as would permit application of the formula mentioned in the statutes. The company presented testimony concerning the average cost of each of the cars it owned with such figure depreciated under a particular formula and without reference to value inuring to such cars as a part of a going concern. There was further testimony to the effect that certain calculations had been made which show that the company had an average of 41.45 cars and 44.31 cars in use daily in Oklahoma during the respective years involved. Testimony was given as to the method used in arriving at these figures, but there was no showing of the facts upon which the calculations were based, and the Commission was without information under which it

could determine the average number of cars in use in the state during the tax periods. The testimony was of no more effect than a bare assertion that the company had an average of 41.45 and 44.31 cars in use in the state during the respective years. Under the circumstances the Commission should have dismissed the company's protest on the ground of insufficiency of the evidence to show that the assessments as made were excessive. However, the Commission chose to not make such negative finding, but went forward and requested the company to furnish a statement of the number of the cars it owned and had in service during the periods involved, and a statement of the cost of such cars, and a statement reflecting the net revenues resulting from the use of the cars. With information thus obtained, and information in the record as hereinbefore referred to, the Commission applied the formula mentioned in the statute and found the amount of ad valorem tax was in excess of the assessments made under section 805a. On the basis of such finding, the protest was denied.

The assignments of error are all directed to the findings and order so made.

Under the first assignment of error it is asserted that the company was denied due process of law in that there was no evidence to support the findings and conclusions upon which the order of the Commission was based.

The information furnished the Commission by the company, the verity of which is unchallenged, reflects that during the fiscal year ending June 30, 1946, the company had 9,910 cars in service and that cars of the company traveled 4,553,616 miles in Oklahoma and 328,893,270 miles outside Oklahoma; that during the fiscal year ending June 30, 1947, the company had 9,744 cars in service and that cars of the company traveled 4,856,891 miles in Oklahoma and 351,940,123 miles outside Oklahoma.

The Commission allocated to Oklahoma that proportion of the total number of cars which the Oklahoma mileage bears to the total mileage to find that the company had 135.27 cars and 132.62 cars with a taxable situs in Oklahoma during the respective years. Obviously, such calculation portrays in a fair degree of accuracy the average number of cars habitually within the state in the years involved. The results as thus obtained are unchallenged except by the bare assertion of the company that it had a lesser number of cars in the state.

The information furnished the Commission by the company reflects that the average net operating income from each of its cars was in excess of $200 per year. The earning capacity is an element to be considered in arriving at the value of the property. In re Oklahoma Gas & Electric Co., 67 Okla. 301, 171 P. 26. The statute directs consideration of any value inuring to such cars by reason of being a part of a going concern. Such is the general rule even in the absence of a statutory declaration. In re Assessment of Western Union Tel. Co., 35 Okla. 626, 130 P. 565, and Union Tank Line v. Wright, 249 U. S. 275, 63 L. Ed. 602.

The statement submitted by the company reflects that the purchase price of its cars during the late years preceding and including 1946 and 1947 was several thousand dollars each.

Article 10, sec. 8 of the Constitution provides:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; . . ."

There was no testimony concerning the sale of cars that had been in service except the sale of wrecked cars and the sale of cars as junk or salvage.

The Commission estimated the average price the cars would bring at a voluntary sale would exceed $1,800. The information furnished the Commission supports the estimate and there is no evidence set forth in the record that in anywise challenges the correctness of the estimate.

The Commission computed the value of the company's cars found to be habitually within the state during the years 1946 and 1947 to be $243,486 and $238,716 (18 x 135.27 and 132.62) and upon application of the average ad valorem tax rate for such years to such valuations found an ad valorem tax liability of $8,254.17 for 1946 and $8,593.77 for 1947; amounts far in excess of the assessments complained of.

Under the second assignment of error it is contended that the Commission erred in using the statutory formula in that the Legislature intended the formula to be used only where no other means was available to establish the necessary factors upon which ad valorem tax might be computed.

We have hereinbefore pointed out that there was no showing made that would permit a determination of the ad valorem tax except by an application of the formula and no proof that challenges the accuracy of the results obtained in the use of the formula.

Under assignments of error Nos. 3 and 4, it is contended that the Commission's finding of the number of cars having a taxable situs in Oklahoma and the order based thereon had a result of charging the company with a discriminatory tax in that cars were allocated to Oklahoma for tax purposes that were never in this state. Attention is directed to the fact that the Commission used all the cars of the company in its computation of the average number of cars used in Oklahoma. Reference is made to the testimony that an average of 1,800 cars were each day undergoing repairs in shops located outside Oklahoma, and that an average of 1,000 cars were each day out of movement because of loading and unloading operations at stations outside Oklahoma. It is asserted that these

cars never had a taxable situs in this state, and should not have been included in the use of the formula involving mileage.

The number of cars found by use of the formula represents an average number of cars habitually within the state during the tax year or the number at one and the same time within the state, and does not represent the total number of the cars used in the state during the year. The computations were made under a premise, and the record reflects, that any and all cars of the company might at some time during the year be in the state as occasion required in transportation of produce into, out of, or through the State of Oklahoma. There is nothing in the record to show how many were so used in the state during either of the tax years. Under the circumstances any or all of the cars entering the repair shops during the particular year may have at some time, before or after and during that year, been used in Oklahoma. The record presents no question of taxing the company with respect to cars that never have come within the borders of the state.

Under the fifth and final assignment of error it is contended that the Commission's finding as to the average value of the company's cars was "utterly without foundation in the record."

We have hereinbefore pointed out that the testimony presented by the company was wholly inadequate to support a conclusion as to the average value of its cars, but that the voluntary statements made by the company support the finding of the Commission.

The order of the Commission denying the protest and affirming the assessments as originally made is affirmed.

DAVISON, C. J., ARNOLD, V. C. J., and LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur.