**OKLAHOMA TAX COMMISSION,**
Plaintiff in Error,

v.

**AMERICAN REFRIGERATOR TRANSIT COMPANY, a corporation, Defendant in Error.**

No. 38451.

Supreme Court of Oklahoma.

Dec. 22, 1959.

Rehearing Denied Feb. 2, 1960.

tiff, as to the correctness of the Commission's action in assessing an income tax against the plaintiff for the year 1955.

The assessment was made and approved by the Commission over the protest of plaintiff, which paid the income tax assessed under protest, and then filed this action in the District Court of Oklahoma County to recover the income tax it paid under protest. The District Court rendered judgment for the plaintiff and the Commission has appealed.

The parties entered into a stipulation covering all material facts involved, which are as follows:.

Plaintiff is a corporation organized under the laws of New Jersey and has never qualified to do business in Oklahoma. Its business has constantly been making refrigerator cars available on a rental basis to railroad companies for the transportation in interstate commerce by railroads of perishable commodities. It has never dealt with shippers, and all freight charges payable by shippers have always been collected and retained by the railroads which rent and use the cars. The lines over which the cars traveled belong to various railroad companies. Not in the year 1955, nor any other year did plaintiff have or maintain any office or place of business, repair facilities, shop, employees or agents within the State of Oklahoma. The only property the plaintiff ever had in Oklahoma during 1955 or any other year was the refrigerator cars as they were hauled through Oklahoma by operating railroad companies under leases executed outside Oklahoma.

That plaintiff has never dealt with shippers and its cars traveled over roads owned by railroads; that freight charges are collected by the railroads which rent plaintiff's cars; that in 1955, (the income tax year in controversy) plaintiff did not have or maintain, "office or place of business, repair facilities, shop, employees or agents in Oklahoma", but on occasions plaintiff's cars were repaired in Oklahoma by the railroad handling them; and the only property the plaintiff had in Oklahoma was its cars.

E. J. Armstrong, Oklahoma City, for plaintiff in error.

Henry B. Taliaferro, Jr., Claude Monnet, Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, for defendant in error.

HALLEY, Justice.

This action involves a controversy between the Oklahoma Tax Commission, herein referred to as "Commission," and American Refrigerator Transit Company, a corporation, hereinafter referred to as plain-

The Commission proposed the assessment of income taxes against plaintiff for 1955, to which plaintiff filed a protest of the assessment and, following a hearing, the Commission assessed income taxes for 1955 in the principal amount of $888.91, with interest in the amount of $135.31, which amounts were paid under protest. After payment, notice of intention to file this action to recover taxes paid under protest was filed and this action was then begun.

Plaintiff proceeded under 68 O.S.1951, § 1475, and denied that it was or is liable to Oklahoma for income taxes, but that if it is, the correct amount would be the amount assessed, a total of $1,024.22, the amount paid by it under the order of the Commission.

That during the year 1955, plaintiff owned an average of 9,718 cars, and during that year they traveled 268,157,757 miles, of which 4,039,933 were in Oklahoma, making 1.50657 per cent of the total mileage that was traveled in Oklahoma; and that under the mileage rates prescribed by Rule 18 of the Association of American Railroads, "The aggregate amount of rentals paid plaintiff in 1955, as measured by Oklahoma mileage during 1955, was $61,391.91, and 96 per cent of this amount was remitted to plaintiff to its main office in St. Louis, Missouri, and the remaining four per cent (4%) was remitted by the operating railroad companies, to the Commission as freight car taxes as provided by Section 805 (1) [805e] of Title 68 O.S.1951, as freight car taxes."

That "The consideration from the railroads to plaintiff for the use of plaintiff's cars was and is in the form of rent. The rental was and is, paid on the basis of a determined amount per mile that each car traveled, and the rent per mile being that published in Rule 18, Code of Per Diem Rules. The railroads rendered monthly reports of the mileage that each car traveled to the plaintiff at its principal place of business which is, and has always been in St. Louis, Missouri."

The stipulation of facts contains considerable matter relative to arrangements under which car rentals were paid, and the briefs contain arguments relative to whether such arrangements or contracts were entered into within or outside Oklahoma. Since it is stipulated that the income involved represents rentals paid on the basis of miles traveled by plaintiff's cars in Oklahoma, such mileage being determined under Rule 18, we deem it unnecessary to determine whether such contracts were entered into within or without Oklahoma.

It was stipulated that "(P)laintiff did no business and derived no income from property in the State of Oklahoma during the year 1955, unless under the facts here involved, the ownership of cars that moved in Oklahoma and the receipt of rentals constituted the doing of business and the deriving of income in Oklahoma."

The plaintiff contends the contracts under which its cars were rented were entered into out of Oklahoma; that it was not present in Oklahoma; that it owned no property in Oklahoma and did no business here; that the income involved here arose from and is attributable to rental contracts entered into outside of this State and is not attributable to either property owned or business done in this State, and for that reason such income as tangible income is not subject to income taxes here.

The Commission does not agree with any of plaintiff's contentions. The principal contention of the Commission to be considered here is its contention that the rental income here involved is attributable to the use of plaintiff's cars in Oklahoma and is for that reason subject to Oklahoma income taxes.

The statutes by which we must decide the principal question before us are 68 O.S. 1951 §§ 876(a), 878(a) (e) and (g) (1) and (3). In Section 876(a), supra, it is provided in part that "A tax is hereby levied upon every person * * * with respect to, the entire income * * * which is derived from all property owned partly within and partly without this State. * * *"

Section 878(a) supra, provides in part that "The term 'gross income * * * (a) Includes gains, profits, and income derived from * * * dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, * * * and also gains or profits and income derived from any source whatever;"

Section 878(e) (1) supra, provides in part as follows:

"(e) Items of the following nature shall be allocated as indicated:

"(1) Income from real and tangible personal property, such as rents, oil and mining production or royalties, and gains or losses from sales of such property, shall be allocated in accordance with the situs of such property; * *"

Section 878(g) (3) provides in part that:

"In the case of an airline, truck or bus enterprise, or freight car, tank car, refrigerator car, or other railroad equipment enterprise, the antecedent term of the ratio shall include a portion of revenue from interstate transportation in the proportion that interstate mileage traveled in Oklahoma bears to total interstate mileage traveled."

■ We think that the statutes quoted make it clear that the Legislature intended to levy a tax on income accruing from property having a situs in Oklahoma, and that the principal question to be determined in this case is whether a portion of plaintiff's cars had a situs in this State in 1955, and if they did, whether the United States Constitution prohibits this State from levying a net income tax on income accruing from the cars having a situs in this State in 1955.

In an early case involving the 1915 Income Tax Act, Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 225, 64 L.Ed. 445, the United States Supreme Court held that a state may impose an income tax on income accruing to non-residents from property within the state levying the tax, and in the body of the opinion said:

"And we deem it clear, upon principle as well as authority, that just as a state may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or business within the state, * *"

■ The rule above is supported by International Harvester Co. v. Wisconsin Department of Taxation, 322 U.S. 435, 64 S.Ct. 1060, 1064, 88 L.Ed. 1373.

■■ It is well settled that a state may give a portion of taxpayer's rolling stock which habitually comes into the State, a situs therein for tax purposes. Johnson Oil Refining Co. v. State of Oklahoma ex rel. Mitchell, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238. In American Refrigerator Transit Co. v. Oklahoma Tax Commission, 201 Okl. 630, 208 P.2d 566, 569, it is said:

"That a state may lay hold of the average habitual use of movable railroad equipment as a basis of taxation is not questioned. When individual items of rolling stock are not continuously the same, but are constantly changing, as the nature of their use requires, it has been held that a state may fix the tax by reference to the average number of cars found to be habitually within its limits. Johnson Oil Refining Co. v. State of Oklahoma ex rel. Mitchell, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238. As was stated in American Refrigerator Transit Co. v. Hall, 174 U.S. 70, 19 S.Ct. 599, 604, 43 L.Ed. 899: 'The tax may be fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed.'"

It is further held in the last case cited that the formula set out in 68 O.S.1951 § 805b for allocating units of rolling stock habitually used in this State, serves to "portray in a fair degree of accuracy the average amount", or number of cars used here. By this formula about 146 of plaintiff's cars

had a situs in Oklahoma during 1955. However, the principal question presented is whether any cars of plaintiff may be said to have a situs in Oklahoma.

In Commissioner of Revenues v. Pacific Fruit Express Co., 227 Ark. 8, 296 S.W.2d 676, 678, the Supreme Court of Arkansas held that the rentals paid by railroads for the use of the company's refrigerator cars in Arkansas were subject to the Arkansas Income Tax Act, which Act contains an income tax statute similar in principle to Section 876(a) of the Oklahoma Act. The Arkansas Supreme Court said in part:

"* * *. In the present case the entire net income tax, on which appellant bases its right to recover in this action, is derived from the non-resident appellee's property,—its cars—, which it owned and which were operated on railroad lines in Arkansas and the tax assessed appears to be on net earnings justly attributable to Arkansas, and certainly we think the authority to impose and enforce such a tax, which we upheld in the McLeod [v. Memphis Natural Gas Company, 207 Ark. 879, 183 S.W.2d 927] case, was made even stronger * * *."

The plaintiff urges that it is not physically present in Oklahoma and that the railroads and not the plaintiff used the cars that earned the income involved. A similar contention was made in Chain Belt Co. v. Oklahoma Tax Commission, 189 Okl. 248, 116 P.2d 899, 900, wherein Chain Belt, a foreign corporation, not licensed to do business in Oklahoma, shipped property to a factor in Oklahoma for sale in Oklahoma by the factor. Upon a sale by the factor, remittance was made to Chain Belt. It was stated in the opinion that "The company (referring to Chain Belt) had no control over the business of consignee but looked solely to the fixed price of goods quoted to consignees. When a consignee sold the merchandise, it was withdrawn from consignment and delivered to consignees customer * * *." This Court approved the income tax assessed on the ground that "(1)

property out of which the income accrued was located * * * here."

In In re Wise (In re Kemnitz), 201 Okl. 395, 206 P.2d 218, this Court rejected the theory that income accruing to the owner of personal property through the exclusive use of said property by others is intangible income taxable at the domicile of the owner.

The Commission cites Warner Bros. Pictures, Inc. v. District of Columbia, 83 U.S. App.D.C. 158, 168 F.2d 157, 159, wherein with regard to the situs of rental income for income tax purposes that "the location of personal property which is the subject of hire betrays the source of the owner's income derived from the hire", and held that the rental income of picture film to exhibitors in the District of Columbia is subject to the District's income tax levy and said in part:

"But we need not decide under the contract there was a joint adventure, a simple lease or some other relation; the simple fact, which cannot be avoided by any technicalities of construction, is that Warner's photoplays were hired to District exhibitors and Warner received a percentage of the money paid by them. Legal niceties cannot destroy the actuality that such money was income from sources within the District."

In Stone v. Stapling Machine Co., 221 Miss. 555, 73 So.2d 123, 127, certiorari dismissed, 348 U.S. 907, 75 S.Ct. 296, 99 L.Ed. 711, income taxes were assessed on rental income accruing to Stapling Machine Company from the use in Mississippi by others of its patented machine for making boxes. The rental contracts covering the use of the patented machines were entered into in New Jersey, and the Stapling Machine Company never qualified to do business in Mississippi, had no offices or agents in that State and was not doing business within the State. The Supreme Court of Mississippi held that the Stapling Machine Company was "being taxed for income which it * * * derived from the use of its patented * * *

property in" Mississippi, and sustained the right of that State to tax such income.

We are of the opinion that the plaintiff had tangible personal property in Oklahoma in 1955 which property had a situs in Oklahoma, though under lease to the railroads, it remained the property of the plaintiff, and was subject to the Oklahoma income tax law. The judgment of the trial court is reversed with directions to enter judgment for the Commission.

WILLIAMS, V. C. J., and JOHNSON, BLACKBIRD, JACKSON and IRWIN, JJ., concur.