# UNITED STATES GLUE COMPANY *v.* TOWN OF OAK CREEK.

ERROR TO THE CIRCUIT COURT OF MILWAUKEE COUNTY, STATE OF WISCONSIN.

No. 233. Argued March 21, 1918.—Decided June 3, 1918.

A State, in laying a general income tax upon the gains and profits of a domestic corporation, may include in the computation the net income derived from transactions in interstate commerce, without contravening the commerce clause of the Constitution.

So *held* in respect of the Wisconsin income tax law (Laws 1911, c. 658), as applied to income from sales to customers outside the State of goods delivered from the company's factory within it, and from

sales to such customers and shipment from the company's branches in other States of goods previously made at its factory within the State and sent to such branches.

161 Wisconsin, 211, affirmed.

THE case is stated in the opinion.

*Mr. George Lines*, with whom *Mr. Willet M. Spooner* and *Mr. Louis Quarles* were on the briefs, for plaintiff in error, in support of the proposition that a tax on income of property or business is a tax upon the property or business itself, cited *Dobbins* v. *Erie County Commrs.*, 16 Pet. 435; *Collector* v. *Day*, 11 Wall. 113; *Weston* v. *Charleston*, 2 Pet. 449; *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429; 158 U. S. 601; *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292; *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688, 695; *Cook* v. *Pennsylvania*, 97 U. S. 566; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Ratterman* v. *Western Union Telegraph Co.*, 127 U. S. 411; *Western Union Telegraph Co.* v. *Alabama*, 132 U. S. 472; *Oklahoma* v. *Wells, Fargo & Co.*, 223 U. S. 298; *Philadelphia & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, 336; *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, 27.

The fact that the law is general and lays a tax upon income within the State's power will not justify the attempt by virtue of it to tax income which is not taxable by the State. *Crew Levick Co.* v. *Pennsylvania, supra; Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas*, 210 U. S. 217, 228; *Minnesota Rate Cases*, 230 U. S. 352; *Houston, East & West Texas Ry. Co.* v. *United States*, 234 U. S. 342; *American Express Co.* v. *Caldwell*, 244 U. S. 617; *Southern Ry. Co.* v. *United States*, 222 U. S. 20.

*Mr. H. J. Killilea* and *Mr. Walter Drew* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

The judgment brought up by this writ of error was entered by the Circuit Court of Milwaukee County upon the mandate of the Supreme Court of the State of Wisconsin issued on reversal of a previous judgment of the circuit court in an action brought by plaintiff in error to recover the sum of $2,835.38, paid under protest as part of a tax assessed and levied by the taxing authorities of the State upon plaintiff's income for the year 1911, under c. 658, Wisconsin Laws 1911. The Supreme Court overruled plaintiff's contention that the portion of the tax that was in controversy, having been imposed upon income derived by plaintiff from interstate commerce, amounted to a burden upon that commerce, contravening the commerce clause of § 8 of Article 1 of the Constitution of the United States. 161 Wisconsin, 211. And this is the sole question presented for our consideration.

The act, which was passed under the authority of an amendment to the state constitution (*Income Tax Cases,* 148 Wisconsin, 456), imposes a tax upon incomes received during the year ending December 31, 1911, and annually thereafter; defines the term "income" as including (a) rent of real estate; (b) interest derived from money loaned or invested in notes, mortgages, bonds, or other evidences of debt; (c) wages, salaries, and the like; (d) dividends or profits derived from stock, or from the purchase and sale of property acquired within three years previous, or from any business whatever; (e) royalties derived from the possession or use of franchises or legalized privileges; and (f) all other income derived from any source, except such as is exempted. There is a provision, "That any person engaged in business within and without the state shall, with respect to income other than that derived from rentals, stocks, bonds, securities or evidences of indebtedness, be taxed only upon that proportion of such income as is

derived from business transacted and property located
within the state," which is to be determined in a particular
manner specified in § 1770b, as far as applicable.

Corporations are allowed to make certain deductions
from gross income, including amounts paid for personal
services of officers and employees and other ordinary
expenses paid out of income in the maintenance and oper-
ation of business and property, including a reasonable
allowance for depreciation, losses not compensated for by
insurance or otherwise, taxes, etc. These need not be
further mentioned, beyond saying that the intent and
necessary effect of the act is to tax not gross receipts but
net income; that from the stipulated facts it appears that
the tax in question was imposed upon plaintiff's net income;
and that this is in accord with the construction of the act
adopted by the supreme court of the State in this and other
cases. *State ex rel. Manitowoc Gas Co.* v. *Wisconsin Tax
Commission,* 161 Wisconsin, 111, 116; *United States Glue
Co.* v. *Oak Creek* (the present case), 161 Wisconsin, 211, 221;
*State ex rel. Bundy* v. *Nygaard,* 163 Wisconsin, 307, 310.

In order to determine what part of the income of a
corporation engaged in business within and without the
State (other than that derived from rentals, stocks, bonds,
securities, etc.) is to be taxed as derived from business
transacted and property located within the State, refer-
ence is had to a formula prescribed by another statute
[§ 1770b, subsec. 7, par. (e) of Wisconsin Stats.] for appor-
tioning the capital stock of foreign corporations, under
which the gross business in dollars of the corporation in
the State, added to the value in dollars of its property
in the State, is made the numerator of a fraction of
which the denominator consists of the total gross busi-
ness in dollars of the corporation both within and
without the State, added to the value in dollars of its
property within and without the State. The resulting
fraction is taken by the income tax law as representing the

proportion of the income which is deemed to be derived from business transacted and property located within the State. This formula was applied in apportioning plaintiff's net "business income" for the year 1911, and upon the portion thus attributed to the State, plus the income from rentals, stocks, bonds, etc., the tax in question was levied.

Plaintiff was and is a corporation organized under the laws of the State of Wisconsin, having its principal office and place of business in the Town of Oak Creek, where it conducted an extensive manufacturing plant, selling its products throughout the State and in other States and foreign countries. Its net "business income" in the year 1911, exclusive of that derived from rentals, stocks, bonds, etc., and after making the deductions allowed by the act, amounted to about $124,000, derived from the following sources: (a) about $16,000 from goods sold to customers within the State and delivered from its factory; (b) about $65,000 from goods sold to customers outside of the State and delivered from its factory; (c) about $31,000 from goods sold to customers outside of the State, the sales having been made and goods shipped from plaintiff's branches in other States, and the goods having been manufactured at plaintiff's factory and shipped before sale to said branches; (d) about $7,000 from goods sold to customers outside of the State, the sales having been made and goods shipped from plaintiff's branches without the State, these goods having been purchased by plaintiff outside of the State and shipped to plaintiff's factory in the State, and thence shipped before sale from the factory to the branches; (e) about $5,000 from goods sold outside of the State, the sales having been made and goods shipped from said branches, and the goods having been purchased by plaintiff outside of the State and shipped from the points of purchase to the branches without coming into the State of Wisconsin.

No contention was made as to the taxability of the income designated in item (a). Plaintiff's contention that items (d) and (e) were not taxable because not derived from property located or business transacted within the State was upheld by the state courts. Thus the controversy is narrowed to the contention, overruled by the supreme court, 'that items (b) and (c) were not taxable because derived from interstate commerce.

Stated concisely, the question is whether a State, in levying a general income tax upon the gains and profits of a domestic corporation, may include in the computation the net income derived from transactions in interstate commerce without contravening the commerce clause of the Constitution of the United States.

It is settled that a State may not directly burden interstate commerce, either by taxation or otherwise. But a tax that only indirectly affects the profits or returns from such commerce is not within the rule. Thus, it was declared in *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688, 695–696: "It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a State on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained. But property in a State belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a State, and may take the form of a tax for the privilege of exercising its franchises within the State, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the State, (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon,) and if payment be not made a condition precedent to the right

to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes." Again, in *Atlantic & Pacific Telegraph Co.* v. *Philadelphia*, 190 U. S. 160, 163, the court upon a review of numerous previous cases laid down certain propositions as established, among them these: (a) that the immunity of an individual or corporation engaged in interstate commerce from state regulation does not prevent a State from imposing ordinary property taxes upon property having a situs within its territory and employed in interstate commerce; and (b) that the franchise of a corporation, although that franchise be the business of interstate commerce, is, as a part of its property, subject to state taxation, provided at least the franchise be not derived from the United States. See, also, *St. Louis Southwestern Ry. Co.* v. *Arkansas*, 235 U. S. 350, 365.

Yet it is obvious that taxes imposed upon property or franchises employed in interstate commerce must be paid from the net returns of such commerce, and diminish them in the same sense that they are diminished by a tax imposed upon the net returns themselves.

The distinction between direct and indirect burdens, with particular reference to a comparison between a tax upon the gross returns of carriers in interstate commerce and a general income tax imposed upon all inhabitants incidentally affecting carriers engaged in such commerce, was the subject of consideration in *Philadelphia & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, 345, where the court, by Mr. Justice Bradley, said: "The corporate franchises, the property, the business, the income of corporations created by a State may undoubtedly be taxed by the State; but in imposing such taxes care should be taken not to interfere with or hamper, directly or by indirection, interstate or foreign commerce, or any other matter exclusively within the jurisdiction of

the Federal government." Many previous cases were referred to.

The correct line of distinction is so well illustrated in two cases decided at the present term that we hardly need go further. In *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292, we held that a state tax upon the business of selling goods in foreign commerce, measured by a certain percentage of the gross transactions in such commerce, was by its necessary effect a tax upon the commerce, and at the same time a duty upon exports, contrary to §§ 8 and 10 of Article I of the Constitution, since it operated to lay a direct burden upon every transaction by withholding for the use of the State a part of every dollar received. On the other hand, in *Peck & Co.* v. *Lowe, ante,* 165, we held that the Income Tax Act of October 3, 1913, c. 16, § 2, 38 Stat. 166, 172, when carried into effect by imposing an assessment upon the entire net income of a corporation, approximately three-fourths of which was derived from the export of goods to foreign countries, did not amount to laying a tax or duty on articles exported within the meaning of Art. 1, § 9, cl. 5 of the Constitution. The distinction between a direct and an indirect burden by way of tax or duty was developed, and it was shown that an income tax laid generally on net incomes, not on income from exportation because of its source or in the way of discrimination, but just as it was laid on other income, and affecting only the net receipts from exportation after all expenses were paid and losses adjusted and the recipient of the income was free to use it as he chose, was only an indirect burden.

The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and inci-

dental.   A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise.   Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce.   A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large.   Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated. as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States.

And so we hold that the Wisconsin income tax law, as applied to the plaintiff in the case before us, can not be deemed to be so direct a burden upon plaintiff's interstate business as to amount to an unconstitutional interference with or regulation of commerce among the States.   It was measured not by the gross receipts, but by the net proceeds from this part of plaintiff's business, along with a like imposition upon its income derived from other sources, and in the same way that other corporations doing business within the State are taxed upon that proportion of their income derived from business transacted and property located within the State, whatever the nature of their business.

*Judgment affirmed.*


Mr. Chief Justice White concurs in the result.