## SPECTOR MOTOR SERVICE, Inc., v. Mc-LAUGHLIN, Tax Commissioner.

### No. 723.

District Court, D. Connecticut.

Nov. 14, 1942.

Day, Berry, & Howard and Cyril Coleman, all of Hartford, Conn., and Nair & Nair and Israel Nair, all of New Britain, Conn., for plaintiff.

Francis A. Pallotti, Atty. Gen., of Connecticut, and Leo V. Gaffney, Asst. Atty. Gen., of Connecticut, for defendant.

SMITH, District Judge.

Plaintiff, a Missouri corporation, has its principal office in Illinois. It is engaged in motor transport of goods between points in the Midwest and points in the Northeast. It pioneered in two-way hauls, establishing terminals in each zone for bringing together, sorting, loading, and unloading and distributing freight handled in the long-haul trips. The terminals are of two types, leased terminals used solely by plaintiff, and agency terminals where the plaintiff has the use of terminal facilities of some other carrier.

The plaintiff, at the request of one of its Connecticut lessors, registered as a foreign corporation in the state of Connecticut and paid the minimum license fee. It maintains terminals (leased) at Bridgeport and New Britain, with office furniture owned by it, and some five pick-up trucks held by it under conditional bill of sale, registered and used solely in Connecticut. It maintains staffs to handle freight at both terminals, as well as to handle local bookkeeping. A sales staff is maintained and paid at the New Britain office. The usual method of payment of salaries and bills at the Connecticut offices is by draft on the corporation at Chicago. Some cash is kept at New Britain for the payment of incidental bills. From one-third to one-half of the dollar volume of the plaintiff's business originates in Connecticut. The plaintiff does not engage in any hauls which both originate and termi-nate in Connecticut or in any other single state. All its long-haul trucks are leased by it from a corporate affiliate, Wallace Transport Company, an Illinois corporation, which owns most of the trucks and obtains some others by lease from individual owner operators.

The State Tax Commissioner, on this state of facts, has determined that plaintiff is subject to the Corporation Business Tax Act of 1935, Gen.St.Supp.1935, § 416c et seq., as amended, as a corporation carrying on business in this state. He has determined that the income of the plaintiff is derived from the manufacture, sale, or use of tangible personal or real property, and that, therefore, the allocation fraction of § 420c (3) (b), 1935 Supp. to G.S. (§ 356e (3) (b), 1939 Supp. to G.S.), should be applied to determine what portion of the net income of the corporation is attributable to business within the state.

The tax is stated in the Act to be a tax or excise upon the franchise of a corporation for the privilege of carrying on or doing business within the state, measured by the entire net income, as therein defined, received by such corporation from business transacted within the state.

Forty percent of the cost of purchased transportation has been ruled by the Commissioner to be "rent" and not deductible in determining net income under the Act.

The total assessment laid against the plaintiff for the period from June 1, 1937, to December 31, 1940, aggregated $7,795.50 as of January 7, 1942.

Plaintiff seeks to enjoin defendant from proceeding against the plaintiff under the Tax Act, and also seeks an adjudication as to the liability of the plaintiff under the Act, claiming (1) that the assessments are illegal and void as a burden to and direct tax upon interstate commerce in violation of Article I, Section 8, of the Constitution of the United States, and Section 1 of the 14th Amendment; (2) that they are unfair and discriminatory in violation of these sections and of Sections 1 and 12, Article I of the Connecticut Constitution in that there is discrimination in assessments between plaintiff and others in the same business; (3) that there is an unconstitutional delegation of power to the defendant in violation of Article II, Constitution of Connecticut, and Amendment 14, Section 1, Constitution of the United States; (4) that the assessments are not authorized by

the statute; and (5) that the assessments are based on inaccurate computations.

▋ It is agreed that no plain, speedy and efficient remedy may be had in the state courts either by appeal, Lathrop v. Norwich, 1930, 111 Conn. 616, 151 A. 183, or by injunction, Waterbury Savings Bank v. Lawler, 1878, 46 Conn. 243.

▋ Since no interlocutory injunction is sought, the case is properly before this court rather than the three-judge court established under Section 266 of the Judicial Code, 28 U.S.C.A. § 380. Smith v. Wilson, 1926, 273 U.S. 388, 47 S.Ct. 385, 71 L.Ed. 699.

▋ The case being properly before this court, the court has jurisdiction to determine all the questions of the case, local as well as federal. R. R. Commission of California v. Pacific Gas & Electric Co., 1938, 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319.

In leasing its terminals in Connecticut, operating owned and leased pick-up trucks, maintaining local office and terminal staffs as well as representatives to maintain contact with Connecticut shippers, plaintiff is carrying on business in its corporate capacity within the state of Connecticut. Yet all its business is in interstate commerce.

Does the statute apply to a corporation so situated, and if so, is it constitutional?

The statute is open to two possible interpretations. If the "tax or excise upon its franchise for the privilege of carrying on or doing business within the state" levied by the Act upon "every other corporation or association carrying on or having the right to carry on, business in this state", Gen.St.Supp.Conn.1939, § 354e, extends only to those corporations or associations engaged in or having the right to engage in intrastate commerce, as the plaintiff contends, the plaintiff is not included in its terms and no federal constitutional question arises under the commerce clause.

If, however, the provisions of the statute extend to corporations or associations engaged solely in interstate commerce, the Act may apply to the plaintiff,. and the state's power to apply it must be tested under the commerce clause.

▋ Of two possible interpretations, that which sustains the constitutionality of the statute must be adopted in preference to that which would require that the statute be declared unconstitutional. Anniston Mfg. Co. v. Davis, 1937, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; Federal Trade Commission v. American Tobacco Co., 1924, 264 U.S. 298, 307, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786; Panama R. R. Co. v. Johnson, 1924, 264 U.S. 375, 390, 44 S.Ct. 391, 68 L.Ed. 748; Blodgett v. Holden, 1927, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206; Camp v. Rogers, 1877, 44 Conn. 291; Ferguson v. Stamford, 1891, 60 Conn. 432, 22 A. 782.

The constitutionality of the statute under the state's interpretation of its meaning becomes material, therefore, in arriving at a decision on the intent of the legislature in its enactment.

The first ground of alleged unconstitutionality is that the tax is a burden on interstate commerce. The question raised under the facts of this case is whether the state, in return for the protection given by it to a corporation carrying on its activities in large part in the state, may, in spite of the commerce clause, require that corporation to pay a tax based on that part of its corporate net income derived from its activities within the state, even though all of its activities in the state are carried on in interstate commerce.

▋ If a corporation is engaged in both interstate and intrastate commerce, the state may levy a tax for the privilege of carrying on business in the state, on a base which takes into consideration net income from both types of business carried on within the state. United States Glue Co. v. Oak Creek, 1918, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135, Ann.Cas.1918E, 748; Western Live Stock v. Bureau of Revenue, 1937, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944; Underwood Typewriter Co. v. Chamberlain, 1920, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165.

▋ "It is settled that a state may not directly burden interstate commerce, either by taxation or otherwise. But a tax that only indirectly affects the profits or returns from such commerce is not within the rule". United States Glue Co. v. Oak Creek, supra, 247 U.S. at page 326, 38 S. Ct. at page 500, 62 L.Ed. 1135, Ann.Cas. 1918E, 748.

▋ The tax here involved is not a tax on gross income, but is based on net earnings, and is, therefore, not within the prohibition of Crew Levick Co. v. Pennsylvania, 1917, 245 U.S. 292, 38 S.Ct. 126, 62

L.Ed. 295, if some intrastate business is transacted by the taxpayer.

■ Nor is it discriminatory, since it applies alike to corporations in the same business, whether domestic or foreign.

There is a serious question as to the fairness of the method used in allocating forty percent of the cost of purchased transportation as "rent" within the meaning of the statute, since the evidence is insufficient to determine accurately whether this was a fair approximation of the payments by this corporation properly allocable to this item. However, since the assessment of the tax must be held invalid on other grounds, this question need not be considered further here.

■ The inclusion of amounts properly classified as "rent" in the tax base as part of net income under the definition of the statute would not, in itself, be improper, since the state is not bound to accept the definition of net income used by the federal tax laws.

■ It may well be that net earnings applicable to all capital used in the business, whether the capital is contributed by lienholders, lessors, or shareholders, is a sounder basis for state taxation, both from the taxpayer's standpoint because a better measure of the value of the governmental services of the state to the taxpayer, and from the state revenue standpoint because less liable to violent fluctuation, than is the federal net income base. See Report of the Connecticut Temporary Tax Commission, 1934, 455 ff. This is a matter of state legislative policy, and should not be interfered with unless there is an actual burden on interstate commerce.

If any part of plaintiff's business were intrastate commerce carried on in Connecticut, the tax might properly be applied to it. However, there must be some intrastate business on which to base this tax, or its application to the plaintiff will be in violation of the commerce clause, as a regulation by the state of interstate commerce. Cooney v. Mountain States Tel. Co., 1935, 294 U.S. 384, 392, 393, 55 S.Ct. 477, 79 L. Ed. 934; Matson Navigation Co. v. State Board, 1935, 297 U.S. 441, 56 S.Ct. 553, 80 L.Ed. 791; Anglo-Chilean Nitrate Corp. v. Alabama, 1933, 288 U.S. 218, 53 S.Ct. 373, 77 L.Ed. 710. Here there is no intrastate business.

■ Nor would the plaintiff's voluntary acquisition of full corporate privileges to do intrastate business furnish a basis for the tax. Anglo-Chilean Nitrate Corp. v. Alabama, supra. Justices Cardozo, Brandeis, and Stone dissenting.

The cases cited establish the rule that any state tax upon the privilege of doing business within a state, if the business done is solely in interstate commerce, is a burden on that commerce and, therefore, invalid.

Strong reasons of policy may be advanced for the state's position, that all business within the state, whether within or without the protection of the commerce clause, should be made to bear its fair share of the cost of running the state's governmental institutions by a tax measured in some way by the benefits derived, without discrimination between local and out-of-state corporations, or between intrastate and interstate business. See the dissenting opinion of Mr. Justice Black in Gwin, White & Prince v. Henneford, 1938, 305 U.S. page 442 ff, 59 S.Ct. page 329, 83 L.Ed. page 278.

■ However, until the present interpretation of the commerce clause, prohibiting taxation by the states of the privilege of doing business solely in interstate commerce, is changed by modification of the rule by the Supreme Court, or by establishment of uniform methods of taxation of interstate commerce by the Congress, under the powers granted to it by the commerce clause, the present tax act must be held invalid if construed to apply to the plaintiff.

■ It must, therefore, be held that the "tax or excise upon its franchise for the privilege of carrying on or doing business within the state" levied by the Act upon "every other corporation or association carrying on, or having the right to carry on, business in this state" means a tax upon the exercise of a franchise to carry on intrastate commerce in the state, and does not apply to foreign corporations or associations, which, during the taxable year, did not carry on, and had no right to exercise the privilege of carrying on or doing, intrastate business in the state.

Whether plaintiff might have been subject to the tax, after the amendment of 1937, Gen.St.Supp.Conn.1939, § 354e, adding the words "or having the right to car-

ry on" business if it had qualified fully to do intrastate business in Connecticut, and whether, if the Act were interpreted as so providing, it would be valid under the Anglo-Chilean case, need not here be decided.

Under its Missouri franchise, filed with the Secretary of the State of Connecticut, plaintiff could do business only as a common carrier. By filing in Connecticut as a foreign corporation, it fulfilled one part of the requirements for carrying on its business within the state in intrastate commerce. Not having qualified with the Public Utilities Commission of Connecticut to operate as an intrastate carrier, however, it had not fully qualified to carry on its business in Connecticut, and had no right to engage in intrastate business in the state. Therefore the statute does not apply to it, and the assessments are not authorized by the statute.

Judgment may be entered declaring that the plaintiff is not subject to the tax for the years in question, and enjoining defendant from attempting to collect from the plaintiff the tax for those years.

A decree may be submitted on three days' notice unless its form can be agreed on.