## Lefferts et al. v. City of Philadelphia et al.

Barnes, Dechert, Price, Myers & Rhoads, for plaintiffs.

R. Landis, Assistant City Solicitor, and Abraham L. Freedman, City Solicitor, for defendants.

LEWIS, P. J., and CARROLL, J., May 18, 1953.—This class action in equity has been brought by William Reuben Lefferts on his own behalf and on behalf of the members of the Philadelphia Chapter of the Pennsylvania Institute of Certified Public Accountants.

The question for our determination is whether persons engaged in a profession or rendering personal services who maintain offices solely in Philadelphia can be compelled to pay a tax to the city on their gross income, although such income was received in whole or in part for services performed outside of Philadelphia.

Pursuant to the adoption of the Mercantile License Tax Ordinance, approved on December 9, 1952, the city solicitor issued regulations for the department of collections which the city declared interpretative of the ordinance. The regulations provide, inter alia, in section 303(a) (9) and section 402(b) as follows:

Section 303(a) (9) :

"(a) The following receipts shall be excluded from gross receipts, and shall be omitted from the tax base;

"(9) Receipts . . . attributable to any item of sale involving the bona fide delivery of goods, commodities, wares or merchandise to a location regularly maintained by the other party to the transaction outside the limits of the City of Philadelphia. . . . This sub-section is limited to the sale of goods . . . and does not refer to or include services, professional or otherwise, of any nature, even where associated with a product."

Section 402(b) :

"(b) . . . if a person engaged in a profession, or vocation or in rendering personal services maintains offices only in Philadelphia, and such person performs part of his work outside Philadelphia, he is not deemed to be engaged in interstate commerce; the entire receipts from personal services rendered outside Philadelphia, whether within or outside of Pennsylvania, must be included in the measure of the tax. . . ."

Plaintiffs contend that these regulations, providing for a tax on all proceeds of services, whether or not earned in Philadelphia, are invalid, and pray that the city be restrained from attempting to enforce the controverted provision.

The facts are few and have been agreed to by the parties in a stipulation which we have approved. The pertinent facts are that William Reuben Lefferts is a nonresident certified public accountant who maintains his sole office in Philadelphia and resides in Jenkintown, Montgomery County, and that from July 1 until December 31, 1952, he earned a gross income of $24,000 from his accounting business; of the total, $7,000 is attributable to Philadelphia clients, although some of the time involved in earning this sum was spent elsewhere than in the City of Philadelphia. The crucial question, however, pertains to the remaining $17,000 which was earned by plaintiff for services performed for clients wholly outside of the municipality.

Over 70 percent of the accounting and auditing work done by plaintiff for these clients who transact no business in Philadelphia—services representing $12,000 of the $17,000 earned—was performed without the city, either at the clients' places of business or at plaintiff's home. Thus, the aggregate revenues that are allocable to work performed in Philadelphia are less than 50 percent of plaintiff's total gross receipts. It is further stipulated by the parties that plaintiff Lefferts' case is representative of the situation of other plaintiffs here involved, although the percentages vary with the individual accountant.

At the outset it should be noted that the attack is not upon the ordinance, but upon the imposition and enforcement of certain regulations drafted by the city solicitor for the department of collections; consequently, it is administrative and not legislative action that we are called upon to review. Thus, the case

assumes an aspect that differentiates it from cases calling for judicial review of legislative action. In passing upon administrative action under an ordinance, not only must the tests be met that are applicable to legislation—viz., legislative intent, statutory authority and constitutionality — but it also is to be determined whether the administrative action conforms with the legislation. It is one thing for city council to embody a provision in an ordinance, and quite another for a law officer of a city to promulgate by way of regulation a provision which the council has not seen fit to adopt.

In denying tax liability under the regulation, plaintiffs contend as follows: (1) The regulations run afoul of the power to tax granted to the city by the Act of August 5, 1932, P. L. 45, hereinafter referred to as the Sterling Act, which limits taxation to services rendered within Philadelphia; (2) the regulations are repugnant to the due process clause of the Pennsylvania and United States Constitutions in that the tax base bears no relation to income earned in Philadelphia, and, finally, the regulations result in arbitrary and discriminatory taxation, in that accountants who maintain branch offices outside of Philadelphia and vendors of goods to customers beyond the city limits are taxed only on those receipts attributable to services and sales within the city's borders.

In countering these arguments the city asserts that the classification is reasonable and constitutional; that Philadelphia has the power under the Sterling Act to tax nonresidents on all income earned as long as their only place of business is in Philadelphia, and that such taxation is constitutional, although the income may be totally attributable to services performed outside the city, so long as no other business office or establishment is maintained by the taxpayer.

That the regulations raise grave constitutional questions cannot be denied, despite the city's attempt to dis-

miss the problem summarily. Two questions present themselves immediately. The first is whether the classification here involved is arbitrary and unreasonable.

The regulations have created a situation whereby a professional man with a branch office and who does 70 percent of his business outside of the city at the branch office, can exclude these receipts from his tax base, while the professional man with an office only in Philadelphia would be required to include the same 70 percent in his tax base. While classification which bears a natural, reasonable and just relation to the act is justifiable, such is not the case where the method of tax computation will produce arbitrary results: Commonwealth v. Alden Coal Co., 251 Pa. 134 (1915) ; Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389 (1928).

In Pennsylvania such discrimination is also violative of the constitutional provisions relating to uniformity: Allentown School District Mercantile Tax Case, 370 Pa. 161 (1952).

In addition, when the regulation is enforced with the ordinance, a scheme of taxation results which allows a total exemption of the proceeds of the sale in Philadelphia of goods delivered to nonresidents, while it imposes a gross receipts tax on the income earned by a professional man rendering services to the same nonresidents. Thus, one doing all of the work of consummating a sale in Philadelphia is exempt if delivery be made out of the city, while one performing like services beyond the city limits is liable for the tax. Though sales and services have been classified differently for some purposes, classification must have a reasonable basis in fact and cannot be arbitrary and capricious:

"In determining whether legislative classification is special and discriminatory regard must be had to the purposes for which the legislation is designed. Differences which make classification for some purposes

proper, may furnish no reasonable basis for classification for other purposes; it is their relation to the end proposed by the particular legislation that determines whether classification is warranted." Com. v. Alden Coal Co., supra.

To say on the one hand that a merchant who sells goods and performs all the work incident thereto in Philadelphia is exempt from the tax if delivery is made outside of the city limits, and on the other hand that a professional man who renders service to nonresident clients and performs all of the services outside of Philadelphia is liable for the tax, produces a discriminatory result that may well fail to meet the test of rational classification.

The second question is the denial of substantive due process when a jurisdiction attempts to tax activities performed beyond its borders. Both the United States and Pennsylvania Supreme Courts have consistently condemned allocation formulas for taxation that bear no relation to the actual income earned in a jurisdiction. In Hans Rees' Sons, Incorporated, v. North Carolina ex rel., Maxwell, Commissioner of Revenue, 283 U. S. 123 (1930), the Supreme Court struck down a net income tax—an exaction far less onerous than a gross receipts tax—imposed by the State of North Carolina which required a corporation deriving 22 percent of its net profits to pay a tax based on approximately 66 to 85 percent of its net income. And the court said, in holding that such taxation contravened the fourteenth amendment.

"When, as in this case, there are different taxing jurisdictions, each competent to lay a tax with respect to what lies within, and is done within, its own borders, and the question is necessarily one of apportionment, evidence may always be received which tends to show that a State has applied a method, which, albeit, fair

on its face, operates so as to reach profits which are in no just sense attributable to transactions within its jurisdiction. . . .

"For the present purpose, in determining the validity of the statutory method as applied to the appellant, it is not necessary to review the evidence in detail, or to determine as a matter of fact the precise part of the income which should be regarded as attributable to the business conducted in North Carolina. It is sufficient to say that, in any aspect of the evidence, and upon the assumption made by the State Court with respect to the facts shown, the statutory method, as applied to the appellant's business for the years in question operated unreasonably and arbitrarily, in attributing to North Carolina a percentage of income out of all appropriate proportion to the business transacted by the appellant in that State. In this view, the taxes as laid were beyond the State's authority. . . ."

When additionally the fact is that the impost is a gross and not a net income tax, the validity of such a scheme of taxation becomes even more doubtful.

In United States Glue Company v. Town of Oak Creek, 247 U. S. 321, 328-29 (1918), the court stated:

"The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent

effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large."

It is a fundamental canon of judicial review, however, that a court will not decide an issue on constitutional grounds if the question is capable of resolution on other bases and, further, that it will not so interpret a statute as to render it unconstitutional if a construction may justly and reasonably be employed under which it is valid: Driscoll et al. v. Edison Light and Power Co., 307 U. S. 104 (1938).

Without passing upon the constitutional questions that have been raised, we are of opinion that the regulations imposing a tax upon income irrespective of where the services resulting in income are performed, must fall, as an invalid usurpation of legislative power by an administrative agency, and as an attempt at taxation that goes beyond the grant of power ceded to Philadelphia in the Sterling Act.

I. Neither the language of the Sterling Act nor the language of the ordinance justifies the regulations that would impose this tax upon the gross income of plaintiff which accrues from the conduct of his profession outside of Philadelphia. Although the city has renewed its attacks upon the validity of the Sterling Act, our ruling in Philadelphia Saving Fund Society et al. v. City, decided April 17, 1953, governs in this case. It suffices to say here that the act is in full effect, both as to the grant and limitation of powers. As the Supreme Court stated in Marson v. City of Philadelphia et al., 342 Pa. 369 (1941) :

"The only power that Philadelphia has to impose any tax on its residents is the power the State gives it in the 'Sterling Act'. Repeal this Act and the power vanishes and the tax falls."

The Sterling Act provides as follows:

"Council of any City of the first . . . class shall have the authority by ordinance, for general revenue purposes, to levy, assess and collect . . . such taxes on persons, transactions, occupations, privileges, subjects and personal property *within the limits of such city of the first . . . class."* (Italics supplied.)

No ambiguity lurks in these words. The statute empowers Philadelphia to tax the enumerated classes to the extent that they are engaged in activity in Philadelphia. We agree with the result reached in City Stores et al. v. Philadelphia, C. P. No. 3, June term, 1951, no. 2165, by decision dated April 17, 1953,[1] where it was held that a conveyance of Philadelphia real estate is not subject to the Philadelphia Stamp Tax Ordinance when delivery of the deed, mortgage and bond were made outside of Philadelphia, because the Sterling Act authorizes taxation of those transactions only within the city limits.

The rule requiring strict construction of taxing statutes, as well as the plain meaning of the language of the statute itself, and the presumption against double taxation, compel the conclusion that the Sterling Act did not empower the City of Philadelphia to levy such a tax as is embodied in the controverted regulations.

Section 58(3) of the Statutory Construction Act of May 28, 1937, P. L. 1019, expressly provides that laws imposing taxes must be strictly construed. As was said in Murray et ux. v. Philadelphia et al., 364 Pa. 157:

". . . the grant of such right is to be strictly construed . . . Tax statutes should receive a strict construction . . . In cases of doubt the construction should be against the Government."

The consistent rulings of the Pennsylvania Supreme Court have evolved the principle that a construction

---

[1] Affirmed by the Supreme Court, 376 Pa. 482.

of tax enactments will be adopted which will avoid double taxation: Arrott's Estate, 322 Pa. 367 (1936) ; Murray et ux. v. Philadelphia et al., 364 Pa. 157, 165 (1950). The court said in Arrott's Estate, supra:

"The presumption of law is against it [double taxation], and continues until overcome by express words of the Legislature showing such intent."

When we couple the use of the limiting words "taxes . . . within the limits of such city" contained in the grant of power of the Sterling Act, with the fact that the avowed purpose of that act was to avoid double taxation of the same subjects and transactions by the State and the municipality, the legislative intent is made clear. The construction of the statute that is most harmonious with the language used is one that prohibits double taxation at local levels, and restricts taxation to occupations and transactions carried on "within the limits."

If the Sterling Act is construed to permit taxation of all income earned by a person rendering services merely because his "office" is in Philadelphia, the tax before us might well be a double impost on the same proceeds, since a mercantile license tax could also be imposed by the county or township where the services are rendered, under the authority of the Home Rule Tax Act of June 25, 1947, P. L. 1145, as amended. The legislature has in the Sterling Act enacted a law one clear purpose of which is to prohibit multiple taxation of the same subject. Against this background the words "within the limits of the city" should receive a construction that is compatible with the general purposes of the act, and since tax statutes should be construed strictly and against the Government (Murray v. City of Philadelphia, supra), we conclude that the act did not authorize Philadelphia to tax gross receipts from occupations and services rendered outside of the city.

The deputy city solicitor has erroneously argued that Marson v. Philadelphia et al., 342 Pa. 369, stands for the proposition that a city may tax extraterritorially. That case involved the question of wage tax liability of State employes required to reside in Philadelphia because of their work, and the court held that such employes were residents of the city and must pay the tax. Clearly that is not the situation before us, for the ordinance under question in the Marson case expressly provided that nonresidents pay a tax only on those wages earned for work done in Philadelphia. Likewise, in Kiker v. Philadelphia et al., 346 Pa. 624, cert. denied, 320 U. S. 741, it was held that nonresidents could be taxed in Philadelphia for compensation earned here. That principle is not controverted in this case. Neither the wage tax ordinance nor the decisions construing it can give vitality to the present regulation. That act provides for a tax on wages and commissions of residents of Philadelphia and wages and commissions of nonresidents earned in Philadelphia. In addition, a net profit tax is imposed on residents' business earnings and on nonresidents for the proceeds coming from their Philadelphia enterprises.[1]

The striking distinction, however, over and above the fact that no attempt to tax all the income of nonresidents has ever been made, is the fact that the latter legislation involved a net income tax, and this ordinance imposes a gross receipts tax.

As stated previously, the courts will use an entirely different standard in adjudicating a gross income tax, since such a tax is one burdening every transaction entered into, whether the transaction is profitable or

---

[1] Later, amendments attempting to impose a general income tax were struck down in Murray et ux. v. City of Philadelphia, supra. See also Murray v. Philadelphia et al., 363 Pa. 524, and Breitinger v. Philadelphia et al., 363 Pa. 512.

not and is not merely a tax on property that constitutes the profits on an enterprise.

The city solicitor admitted in his argument that the tax is imposed for the privilege of carrying on a business in Philadelphia. Clearly, the Sterling Act cannot be construed to mean that the legislature intended to give Philadelphia the authority to impose a tax upon every transaction performed by a nonresident rendering services, regardless of the locale of the performance, merely because the person so engaged has his only office in the city. Under the regulations, it is wholly possible, and indeed it is the case here before us, for a nonresident doing the bulk of his business throughout the rest of the State to be forced to pay a tax on all of his receipts, if he maintains his sole office in Philadelphia.

II. Quite apart from the authority granted in the Sterling Act, we think that the tax attempted here is void because the ordinance does not provide for the system of taxation imposed by the regulation, rather the "tax" stems from an administrative agency, and it must fall because it constitutes an invalid assumption of legislative power by the agency.

In construing the ordinance, the same rules are applicable that apply to statutory construction. As the court stated in Breitinger v. City of Philadelphia et al., 363 Pa. 512 (1950):

"Courts must presume that City Council intended to pass an ordinance within its legislative power and that the city did not intend to levy a tax which it had no authority to impose."

And further:

". . . Municipal corporations can levy no taxes general or special, upon inhabitants, or their property, unless the power be plainly and unmistakably conferred . . . and the grant of such right is to be strictly construed, and not extended by implication."

Further, where it is possible to adopt a constitutional interpretation of an ordinance, it is the courts' duty to follow such construction: Commonwealth v. Schuylkill Trust Company, 327 Pa. 127 (1937); Dole v. Philadelphia et al., 337 Pa. 375 (1904); Evans v. West Norriton Township Municipal Authority, 370 Pa. 150 (1952).

The language of the ordinance not only renders it compatible with the grant of power given by the Sterling Act and with constitutional construction but, indeed, seems to show a legislative intent contrary to the regulation drafted by the city solicitor and adopted by the department of collections. In section 1(e) of the ordinance, business is defined as "the carrying on or exercising for gain or profit *within* the City of Philadelphna of any trade, business, profession, vocation, etc." (Italics supplied.)

Thus, in the defining clause, the profession and services specifically referred to as being taxable are those carried on within Philadelphia. And further, in section 1(h) (3) the ordinance, in defining the gross value of business, specifically excludes "receipts or the portions thereof attributable to any item of sale made by the bona fide delivery of goods . . . or merchandise to a location regularly maintained by the other party to the transaction outside the limits of the City of Philadelphia. . . ."

Taking the ordinance as a whole, it is evident that council did not intend to exceed its authority, and both in the title and definitions it limited taxation to those business and professions carried on in Philadelphia. Again, our interpretation is to be guided by the Statutory Construction Act, supra, which states unequivocally in section 51:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

It should be noted that no weight is to be given to regulations or administrative interpretation of the legislative enactment where the statutory terms are clear and explicit: Industrial Food Service v. Pittsburgh, 171 Pa. Superior 291 (1952) ; Federal Deposit Ins. Corp. v. Board of Finance and Revenue, 368 Pa. 463 (1951).

A reading of the statute, without more, would lead to this conclusion, and when we consider the profound question of constitutionality and legislative authority which is presented by the city's interpretation, we are compelled to construe the ordinance so that it may stand. It is significant that council saw fit to exempt all sales to nonresidents of Philadelphia, merely upon delivery of the goods sold to a place beyond the city limits. In the case of sales, all that must be done to carry on the merchandising business is done in Philadelphia. Yet the mere mechanical act of delivery, once the sale is consummated, is sufficient to take the entire transaction out of the tax base. It would seem to follow inexorably that legislation that excludes from taxation a sales transaction that has been consummated completely in Philadelphia was not intended to subject persons who render services outside the city to taxation for such labor performed beyond Philadelphia's borders.

It is true no specific provision was made for services, but the definition of "business", coupled with the provisions relating to sales and a reading of the statute as a whole, indicate that legislative intent with reference to professions did not run counter to the provisions of the act that have been discussed.

It is axiomatic that the legislature cannot delegate its authority to the department of collections or to any other administrative agency, and it follows even more clearly that an administrative agency cannot usurp legislative powers which have not been ceded to it.

Definite standards must be stated in a statute or ordinance to guide, control and limit execution of the enactment, and these standards cannot be left to the discretion of an administrative agency: United States v. Dettra Flag Co., Inc., et al., 86 F. Supp. 84; Murray v. Philadelphia et al., 364 Pa. 157 (1950).

Not only has the department of collections legislated in promulgating the regulation before us, but it has written a provision that is at variance with the express terms of the ordinance itself, which limits taxes to business actually transacted in Philadelphia. It is true that the ordinance does not give detailed procedures for allocation of receipts derived from services, but it is quite clear that the regulation is not consonant with the system of taxation provided for in the ordinance.

An administrative agency cannot arrogate to itself the legislative function and, under the guise of a regulation, in effect rewrite part of an ordinance. All the agency can do is to prepare regulations that will expedite administration of the act. This it has failed to do, but, instead, has written a provision which completely alters the councilmanic ordinance.

Accordingly, we hold that regulation 402(b) is an invalid usurpation of legislative authority by an administrative agency. We further hold that neither the Sterling Act nor the ordinance empowers Philadelphia to levy a gross receipts tax upon all receipts from a profession irrespective of the places where the transactions occur, and that Philadelphia's power to levy such a tax is limited to receipts from those transactions occurring within the city.

As the regulation applied to all professions and to all who render services, our ruling necessarily applies to the entire class that was contemplated by the regulation.

The following order is entered:

It is ordered, adjudged and decreed:

1. The provisions of regulation 402(*b*) under the Mercantile License Tax Ordinance are adjudged invalid and the City of Philadelphia is perpetually restrained from enforcing or attempting to enforce such regulation.

2. Defendant shall bear the costs of this suit.