COMMERCIAL CREDIT CONSUMER
SERVICES, INC.

v.

John H. NORBERG, Tax Administrator.

No. 84-97-M.P.

Supreme Court of Rhode Island.

Dec. 16, 1986.

Michael P. DeFanti, Hans P. Olsen, Hinckley Allen Tobin & Silverstein, Mark A. Dingley, Adler Pollack & Sheehan, Providence, for plaintiff.

Marcia McGair, Ippolito, Chief Legal Counsel, Div. of Taxation, for defendant.

## OPINION

WEISBERGER, Justice.

This is a petition for certiorari wherein Commercial Credit Consumer Services, Inc. (Commercial), seeks to review a decision of the District Court upholding a determination by the tax administrator denying the application of Commercial for a tax refund. We affirm.

The facts relating to this petition are stated in the findings adopted by the tax administrator.

"1. Commercial Credit Consumer Services, Inc., (taxpayer) is a Rhode Island corporation formerly known as Commercial Credit Plans Incorporated.

"2. Prior to 1978, the taxpayer was not operating in any state other than Rhode Island.

"3. Between 1978 and 1979, the taxpayer qualified to do business in and opened offices in four other states: North Carolina, Alabama, Virginia and Maryland.

"4. For the years 1978 and 1979, the taxpayer had taxable income of $142,-486.86 and $1,220,724.81, respectively.

"5. The taxpayer paid the tax for the years 1978 and 1979 in the following

amounts: 1978—$11,398.95, 1979—$97,-657.98.

"6. The taxpayer filed a claim for partial refund for said taxes paid for those years based upon a formula allocating its income both within and without Rhode Island.

"7. The taxpayer's claim for refund based upon the apportionment of its income both within and without Rhode Island was denied.

"8. The taxpayer requested a formal hearing on the denial of its claim for refund for the years 1978 and 1979."

In addition to the foregoing findings of fact, it is noted in the decision of the District Court that in 1978, as much as 76 percent of Commercial's business was done in Rhode Island whereas in 1979 only 6.3 percent of the business was done in Rhode Island. For purposes of taxation Commercial (a loan and investment company) is classified as a banking institution. The tax in question is authorized by G.L.1956 (1980 Reenactment) § 44–14–3, which levies a tax on all banking institutions organized or incorporated under the laws of this state, which tax, insofar as pertinent to this case, is computed at the rate of 8 percent on net income from whatever source said income may be derived save that certain capital gains from sale of assets are exempt from the tax base. Moreover, all ordinary and necessary expenses of doing business may be deducted from net income. Such expenses would include taxes paid to other states.

Commercial paid the taxes for the years 1978 and 1979 in the amounts of $11,398.95 and $97,657.98, respectively, under protest and seeks a partial refund based upon an apportionment of its income within and outside the State of Rhode Island. Although the Rhode Island general corporation tax provides for an apportionment of income, the bank tax here in issue does not. Banking institutions are exempt from the general corporation tax.

The history of constitutional adjudication under the due process clause and the commerce clause of the United States Constitution has resulted in the refinement of doctrine from initial determinations that a state could not tax interstate commerce, such as the *Case of the State Freight Tax,* 82 U.S. (15 Wall.) 232, 21 L.Ed. 146 (1872), to the modern doctrine that appears to permit, either under the commerce clause or under the due process clause, a state to tax businesses engaged in interstate commerce so long as the tax is applied to an activity that bears a substantial nexus to the taxing state, is fairly apportioned,[1] does not discriminate against interstate commerce, and is fairly related to the services provided by the state. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); *see Wardair Canada, Inc. v. Florida Dept. of Revenue,* — U.S. —, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986).

At no time in the history of interstate commerce taxation by individual states has the Supreme Court of the United States been called upon to decide whether a state may tax the unapportioned net income of a domestic corporation that does business in or derives income from other states. 1 J. Hellerstein, *State Taxation* 306 (1983). This principle has been discussed by other commentators. G. Altman and F. Keesling in their treatise entitled *Allocation of Income in State Taxation* 31 (2d Ed.1950) observe: "[I]t seems fair to conclude that a nondiscriminatory tax on or measured by net income, imposed by the state of the

---

1. This requirement has generally been applied to gross-income taxes levied by states upon foreign corporations. In respect to resident individuals and domestic corporations, many cases have suggested that their income is taxable whether it be derived from sources within or outside the state, *New York ex rel. Cohn v. Graves,* 300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 666 (1937); *Lawrence v. State Tax Commission of Mississippi,* 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102 (1932); *Montag Bros., Inc. v. State Revenue Commission,* 50 Ga.App. 660, 179 S.E. 563 (1935), *aff'd,* 182 Ga. 568, 186 S.E. 558 (1936); *Maguire v. Tax Commissioner,* 230 Mass. 503, 120 N.E. 162 (1918), *aff'd,* 253 U.S. 12, 40 S.Ct. 417, 64 L.Ed. 739 (1920). The purpose of apportionment is to avoid the danger of multiple taxation.

taxpayer's domicile, may include in its base the entire net income regardless of its sources without being subject to any constitutional infirmity."

Although no case has dealt directly with this issue, the Supreme Court of the United States in *United States Glue Co. v. Oak Creek*, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135 (1918), pointed out the distinction between a tax upon gross receipts and a tax upon net income.

"A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States." *Id.* at 329, 38 S.Ct. at 501, 62 L.Ed. at 1141.

Moreover, in the more recent case of *Mobil Oil Corp. v. Commissioner of Taxes of Vermont*, 445 U.S. 425, 445, 100 S.Ct. 1223, 1236, 63 L.Ed.2d 510, 526 (1980), a factual assumption was made by the Court that the state of commercial domicile "has the authority to lay some tax on [Mobil's] dividend income as well as on the value of its stock."

■ In the case at bar, there is no question that Commercial's domicile in Rhode Island affords the necessary nexus upon which this state may levy a tax on its net income. Commercial is in effect a banking corporation that has been granted extraordinary privileges not accorded to ordinary business corporations. Indeed, so important and valuable are these privileges that a banking or loan and investment corporation may not be formed without the specific and special permission of the Board of Bank Incorporation upon issuance of a certificate of public convenience and necessity. Commercial is a loan and investment company that was required to have such special permission in order to incorporate pursuant to G.L.1956 (1982 Reenactment) § 19–20–3. Moreover, loan and investment companies are permitted to accept savings deposits as well as to lend money on all types of personal obligations in addition to mortgages on real estate pursuant to § 19–20–9.

Such companies are required to report to the State Director of Business Regulation concerning the financial condition of the corporation at least twice within any calendar year under § 19–20–8. Consequently, in return for substantial privileges such loan and investment companies are subject to close and expensive scrutiny by officials of this state not only for the protection of Rhode Island customers but for the protection of out-of-state customers in the event that such a corporation forms a branch outside this state with the approval of the Board of Bank Incorporation in accordance with § 19–20–5.1.

■ Certainly the tax in respect to Commercial does not discriminate against interstate commerce because the identical tax is levied upon all banking and loan and investment companies that are domiciled within this state regardless of whether they are engaged in interstate or purely intrastate activities.

■ Since this is a net-income tax, from which all ordinary and necessary expenses of doing business may be deducted from

gross income, it cannot be argued that multiple taxation is a significant danger in this instance. Although the record is far from clear concerning taxes that have been levied upon Commercial by other states in which it has done or may do business, it is clear that taxes paid to any of these states may be deducted from gross income for purposes of the Rhode Island net-income tax, § 44–14–3.

Although Commercial argues that deduction of taxes paid to other states is not so favorable as a tax credit, we are dealing here not with an ideal tax statute but with constitutional limits upon the power of the Legislature of the domicile state to levy a tax upon a corporation on the basis of its net income. We are of the opinion that allowing a deduction for taxes paid to other states reduces the possibility of multiple taxation to a level wherein constitutional limitations are satisfied.

As earlier noted in this opinion, loan and investment corporations are also given special tax treatment not accorded other business corporations in this state. Section 44–14–11 excludes from gross income gains from the sale or other disposition of property other than securities. Moreover, gain or loss from disposition of securities is accorded special treatment under § 44–14–12 in terms of determining the tax basis of such securities.

In summary, we are of the opinion that the tax assessed upon Commercial and other Rhode Island financial institutions does not discriminate against interstate commerce, is fairly related to the services provided by the domiciliary state, does not submit the corporation to multiple taxation, and thus does not offend either the commerce clause contained in the Federal Constitution or the due process clause of the Fourteenth Amendment to the Constitution of the United States.

For the reasons stated, the petition for certiorari is hereby denied and dismissed. The writ heretofore issued is quashed. The papers in the case may be remanded to the District Court with our decision endorsed thereon.